UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JCG,                                                            :
                                                               :
                              Plaintiff,                        :        11 Civ. 6844 (CM) (JLC)
                                                               :
              -v-                                               :
                                                               :
ROBERT E. ERCOLE, *et al.*,                                     :
                                                               :
                              Defendants.                       :
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/14

## REPORT AND RECOMMENDATION

USDC SDNY
DATE SCANNED___4/24/14

I. BACKGROUND............................................................................ 2

   A. Plaintiff's Allegations............................................................ 2

       1. Denial of Religious Accommodations........................... 3

       2. Harassment......................................................... 3

       3. Assault.............................................................. 4

       4. Supervisory Liability.............................................. 5

       5. Ticket and Administrative Hearing............................ 5

   B. Procedural History............................................................. 6

II. DISCUSSION............................................................................ 9

   A. Standard of Review for a Motion to Dismiss............................ 9

   B. Exhaustion of Administrative Remedies................................. 11

       1. Legal Standard under the PLRA............................... 11

       2. Analysis of Plaintiff's Efforts To Exhaust................... 13

          a. Plaintiff Failed to Complete the Exhaustion Requirements.. 13

          b. Even Though Plaintiff Failed to Properly Exhaust, Dismissal is Not Warranted On This Ground............................... 14

   C. The Statute of Limitations.................................................. 18

       1. The Original Complaint........................................... 20

          a. Claims Against Defendant Chill Should Not Be Dismissed as Time-Barred.................................................... 20

          b. Claims Against Defendant Ercole Should Not Be Dismissed as Time-Barred.................................................... 22

       2. The Amended Complaint......................................... 23

          a. Plaintiff's Claims Against the "John Doe" Defendants Do Not Relate Back to the Original Complaint...................... 24

          b. Plaintiff's Claims Against Defendants Described in the Original Complaint Should Not Be Dismissed as Time-Barred.......... 29

          c. In the Alternative, the Claims Against the Defendants Described in the Original Complaint Should Be Deemed to Relate Back..32

D.  Requirement of Personal Involvement Under § 1983.............................. 36

E.  Plaintiff's Freedom of Religion Claims................................................. 38

    1.  Plaintiff Does Not Have a Viable Claim Under the RFRA............. 38

    2.  Plaintiff's First Amendment Free Exercise Claim...................... 39

        a.  Right to Receive Kosher Meals..................................... 40

            i.  The Motion to Dismiss the Claim Against Defendant Chill For Failure to Provide Kosher Meals Should Be Denied..40

            ii.  The Motion to Dismiss the Claim Against Defendant Foroscij Should Be Granted................................. 41

        b.  The Motion to Dismiss the Claim Against Defendant Chill For Denying Access to Religious Services Should Be Denied...... 42

F.  Eighth Amendment Violations............................................................ 44

    1.  Plaintiff's Excessive Force Claim Should Be Dismissed................ 44

    2.  Plaintiff's Failure to Protect Claim Should Be Dismissed............. 45

    3.  Plaintiff's Failure to Train and Supervise Claim Should Be Dismissed............................................................ 50

    4.  Plaintiff's Claim of Inadequate Medical Care Should Be Dismissed Against All Defendants, With the Exception of Koskowski............ 53

G.  Other Claims................................................................................ 58

    1.  Plaintiff's First Amendment Retaliation Claim Should Be Dismissed............................................................ 58

    2.  Plaintiff's Deprivation of Property Claim Should Be Dismissed...... 59

    3.  Plaintiff's Search and Seizure Claim Should Be Dismissed............ 60

    4.  Plaintiff's Claim Regarding the Disciplinary Ticket Should Be Dismissed............................................................ 61

H.  Leave to Amend............................................................................ 63

III.  CONCLUSION................................................................................ 64

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Colleen McMahon, United States District Judge:**

Plaintiff JCG,[1] a prisoner currently incarcerated at Marcy Correctional Facility in Marcy, New York, has brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Green Haven Correctional Facility ("Green Haven"), in Stormville, New York. Proceeding pro se, Plaintiff has sued 20 Defendants: Robert Ercole, former superintendent of Green Haven, Rabbi Chill, Sgt. R. Wahlquist, C.O. D. Benitez, Jr., Sgt. S. Murphy, C.O. Phillips, C.O. Foroscij (sued herein as C.O. Forosky, hereafter "Foroscij"), C.O. Brothers, C.O. C. Mell, C.O. W. Monzon, C.O. M. Wesley, C.O. John Thorpe, C.O. J. Martin, C.O. M. Speed, Dr. J. Bendheim, Sgt. L. Fitch, R.N. S. Fila, C.O. L. Iuzinni (sued herein as C.O. L. Luzinni, hereafter "Iuzinni"), former Assistant Deputy Superintendent of Programs L. Cecilia, and former Deputy Superintendent of Security R. Koskowski (collectively, "Defendants"), as well as a group of "John Doe" Defendants.[2]

---

[1] On February 28, 2014, Judge McMahon granted Plaintiff's request to change the caption to reflect that his name be listed as JCG, as opposed to his full name. See Dkt. No. 116.

[2] In their Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint ("Def. Mem.") (Dkt. No. 92), at 1 n.1, Defendants assert that Defendants Iuzzini, Bendheim, and Phillips had not been served by the date that the motion to dismiss was submitted, and are consequently not represented by the Attorney General's Office for the purposes of this motion. The United States Marshals Service did attempt to serve Defendant Bendheim on April 26, 2013, but service was not executed. (Dkt. No. 76). Moreover, despite the fact that on June 12, 2013, I directed the Clerk's Office to send Plaintiff an additional form to effect service on Bendheim (Dkt. No. 87), it does not appear that Plaintiff made any further attempts to serve him. The docket also indicates that Defendant Phillips has not been served nor has he executed a waiver of service. Accordingly, as it now past the time to have served Defendants Bendheim and Phillips, and Plaintiff has not sought an extension of time to execute service, I recommend that any claims against them be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. However, I decline to recommend dismissal of the claims against Defendant Iuzinni on this basis as Defendants are incorrect in their assertion that he was never served – to the contrary, the record reflects that service was executed on March 5, 2013. See Dkt. No. 63.

The Court further notes that Defendants Foroscij and Thorpe have apparently not been served (Dkt. Nos. 83, 84), nor is there any proof of service on the docket as to Defendants Brothers, Monzon, or Benitez. However, Defendants have waived service for these five individuals by moving to dismiss on their behalf (Dkt. No. 91). See Fed. R. Civ. P. 12(h)(1)(B).

Plaintiff's Amended Complaint includes a series of allegations that can loosely be divided into five separate claims: (1) Rabbi Chill did not provide adequate accommodation for Plaintiff's religious beliefs in violation of the First Amendment and the Religious Freedom Restoration Act; (2) Plaintiff was assaulted by several officers on September 23, 2008, and was subsequently denied adequate medical treatment; (3) Green Haven staff engaged in a campaign of harassment against Plaintiff by committing the assault described above and by engaging in theft and other misconduct; (4) Ercole and Koskowski are responsible for the constitutional wrongs described in the Amended Complaint in that they failed to protect Plaintiff and failed to properly train and supervise Green Haven staff; and (5) Koskowski, Murphy, and Cecelia failed to conduct a proper investigation of fraudulent charges against Plaintiff, causing Plaintiff to spend 69 days in the Special Housing Unit ("SHU"), and that their actions constitute libel and slander.  Plaintiff seeks $700,000 in compensatory damages for pain and suffering and $300,000 in punitive damages.

Defendants have moved to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, I recommend that the motion to dismiss be granted, except for Plaintiff's claim against Defendant Chill for violating his right to receive Kosher meals and access to religious services and his claim against Defendant Koskowski pertaining to inadequate medical treatment, as to which the motion should be denied.

## I.  BACKGROUND

### A.  Plaintiff's Allegations

The following facts are taken from the Amended Complaint, which Plaintiff filed on June 28, 2012.  Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 ("Am. Compl.") (Dkt. No. 20).[3]

---

[3] While the timeline of the events described in the Amended Complaint is not entirely clear, the Court has endeavored to piece together a rough chronology of Plaintiff's allegations.

### 1. Denial of Religious Accommodations

Plaintiff is "a type of Messianic Jew" who keeps kosher in accordance with his religious beliefs. Am. Compl., ¶ 4. Plaintiff states that while he was housed at Green Haven, he wrote several letters to the facility's Jewish Chaplin, Rabbi Chill, to request kosher meals. Id. However, Rabbi Chill allegedly ignored all of these requests, as well as other staff orders to place Plaintiff on the kosher meal list. Id. at ¶¶ 4-5. Plaintiff asserts that in one instance, he encountered Rabbi Chill and asked whether he had received Plaintiff's letter requests, to which Rabbi Chill replied: "you are [Plaintiff]? You are not a jew and jews don't do what you did." Id. at ¶ 5. Plaintiff also contends that Rabbi Chill denied Plaintiff the right to attend religious services and meet with a rabbi. Id. at ¶ 32. Finally, Plaintiff claims that on November 3, 2008, during his time in the SHU, Foroscij, a corrections officer, "purposefully denied [him] his kosher breakfast tray." Id. at ¶ 27.

### 2. Harassment

Beginning at the time of his arrival at Green Haven, Plaintiff states that he experienced "an immediate hostility" due to the fact that he was convicted of a sexual offense. Am. Compl., ¶ 1. He provides several examples of this hostility, describing the offenses allegedly carried out by corrections officers at Green Haven. Plaintiff contends he was called a "raper" and a "baby rapo" and was asked "[w]ho are you going to rape here?" Id. at ¶¶ 2, 3. He also alleges that Koskowski made derogatory comments regarding his criminal conviction. Id. at ¶ 14.

Plaintiff further asserts that corrections officers took Plaintiff's personal property "in retaliation for [his] criminal case" (id. at ¶ 2) and because of an administrative ticket that had been issued against him (described further below). Id. at ¶ 28. Specifically, Officer Benitez "retaliated" against him by searching and "thrashing" his cell, calling it "filthy" on a search slip, and entering his cell while Plaintiff was not there to steal his lamp, calculator, bibles, food, commissary items, and other property. Id. at ¶¶ 16-17. Plaintiff was then prevented from retrieving his bags of property. Id. at ¶ 18. Plaintiff also asserts that other unidentified officers stole a guitar case, personal paper work, some legal paper work, and all of his personal property.

3

Id. at ¶ 29.  Officers Phillips and Brothers allegedly stole a newspaper, writing pad, a pen, two magazines, and some newspapers.  Id. at ¶ 28.

### 3.  Assault

Plaintiff maintains that on or around September 23, 2008, he was woken up and taken to the front of the block, where he was "ordered to get in the pat frisk position and then [was] severely assaulted while being held against the wall by at least three or four officers (very possibly C.O. Joseph Martin, C.O. Christian Mell, C.O Mark Wesley and C.O. John Thorpe) and Sgt. Robert Wahlquist."  Id. at ¶ 20.[4]  Plaintiff contends he was punched in the back and in the back of his head, and was kicked and kneed in the back of his right leg, after which he was unable to stand.  Id. at ¶ 21.  Corrections officers purportedly held Plaintiff up so that Sergeant Wahlquist could knee him in the leg, arm, and chest.  Id.  Then, Plaintiff alleges, he was dragged to the SHU, where he was "mocked, harassed, taunted, made fun of and physically abused" by Officer Brothers and another officer.  Id. at ¶ 22.  An unidentified corrections officer allegedly pressed his finger into Plaintiff's injured leg and hurt him by "almost violently taking off [his] clothes and sneakers."  Id. at ¶ 23.  According to Plaintiff, he was subsequently dragged to the nurse's office, while "screaming, crying, [and] hyperventilating," and then was dragged back to his cell in the SHU, where he was dropped on the floor "only wearing undershorts, screaming and crying with nothing in the cell."  Id.

A short time later, Plaintiff was taken to Hudson Hospital, where he was X-rayed and placed on IV pain medication.  Id. at ¶ 24.  According to Plaintiff, he was released back to prison the same day, spent the night in the infirmary, and was discharged from the infirmary even

---

[4] Though Plaintiff appears to allege that he was assaulted "due directly to the nature of the allegations in the ticket," (id. at ¶ 10), Plaintiff also refers to the fact that he requested a "medically needed move" and that one of the officers accused of assaulting him had "answered the emergency move request letter" (id. at ¶¶ 15, 20).

though he could not walk and had not seen a doctor. Id. at ¶¶ 24-25.  Plaintiff contends that two

officers ("possibly" Officers Iuzzini and Speed) came to collect him, forced him to stand up and

violently dropped him, held him up by the nose by placing fingers in his nostrils, and then cuffed

him and dragged him back to the SHU. Id. at ¶ 26.  During this altercation, one of the officers

allegedly referred to Plaintiff as a "spick" and a "pedophile." Id.

### 4.  Supervisory Liability

According to Plaintiff, Ercole, who was Superintendent of Green Haven at the time

Plaintiff was incarcerated there, was aware of "criminal activity" and "other constitutional

violations" committed by his staff. Id. at ¶ 7.  Plaintiff alleges that Ercole's failure to train,

supervise, or correct the behavior of his staff, and to prevent assaults against Plaintiff, amounted

to deliberate indifference. Id. at ¶ 7, 8, 33.  Further, Plaintiff asserts, Ercole "knew first hand of

the numerous instances of petit larcenies performed by staff, retaliations, conviction, race,

religion, sexual orientation discriminations and violations of due process and equal protection by

staff." Id. at ¶ 8.  Plaintiff also maintains that Koskowski, who was Deputy Superintendent of

Security, was aware of the attacks against Plaintiff, failed to train prison staff, and denied

Plaintiff his right to medical care. Id. at ¶¶ 10, 11, 14, 36.  Specifically, Plaintiff claims that

Koskowski "personally knew of" and "condoned" the assault against him and yet "failed to

punish the offenders." Id. at ¶¶ 11, 12, 14.  Further, Plaintiff maintains, Koskowski purposefully

failed to remove Plaintiff from the SHU to the clinic and did not change the policy forbidding

inmates in the SHU from using a cane or crutches, thereby denying him proper access to medical

care. Id. at ¶¶ 13, 36.

### 5.  Ticket and Administrative Hearing

According to Plaintiff, at some point prior to September 15, 2008, other inmates with

"severe ulterior motives" brought false allegations against him. Id. at ¶ 9.  In response, Sergeant

Murphy "deliberately and negligently performed what he knew was a closed and critically deficient investigation" in which he only interviewed the accusers. Id. Plaintiff was subsequently issued a disciplinary ticket charging him with threats and attempt to commit bodily harm. Id. at ¶¶ 9, 28.[5] Plaintiff claims that Koskowski failed to properly dismiss all proceedings against him, despite being "presented [with] incontrovertible evidence that the allegations . . . were not only NOT plausible or feasible but actually impossible." Id. at ¶¶ 9-10. The disciplinary ticket against Plaintiff was ultimately dismissed, but, Plaintiff asserts, Koskowski still issued an administrative segregation ticket and, consequently, Plaintiff spent 69 days in the SHU. Id. at ¶¶ 11, 30. Plaintiff contends that Cecelia was also aware of the assault and knew the charges were false. Id. at ¶ 31. He further alleges that Cecelia improperly urged Plaintiff not to present a defense against the charges against him. Id.

## B. Procedural History

Plaintiff filed his Original Complaint on September 16, 2011 against Defendants Chill, Ercole, and various John Does. See Inmate Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 ("Compl.") (Dkt. No. 1), at 1, 2, 21;[6] Application to Proceed Without Full Prepayment of Fees (Dkt. No. 2), at 2.[7] On December 5, 2011, Judge McMahon issued an Order directing that the

---

[5] Though he was ostensibly placed under investigation because of charges made by other inmates, Plaintiff also suggests that the investigation may have been in retaliation for a grievance he either filed or intended to file against Defendant Benitez. Am. Compl., ¶ 19. (Plaintiff alleges that, when asked what he was going to do about Benitez's alleged theft of his belongings, "[Plaintiff] said he would file a grievance and claim and win because [he] still had proof of the receipts of some of the property stolen by C.O. Benitez. Several days later, [Plaintiff] was placed under investigation."). Id.

[6] Given the inconsistency of the page numbers in Plaintiff's Original Complaint, for purposes of clarity, the Court refers to the ECF page number when citing to information therein in instances where there is no paragraph number.

[7] Under the prison-mailbox rule, a pro se prisoner's complaint is deemed filed on the date that he delivered the complaint to prison officials for transmittal to the court. See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)). Courts in this

New York State Department of Corrections and Community Supervision ("DOCCS") provide assistance to Plaintiff in identifying various defendants pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997). Dkt. No. 9. The Order also directed Plaintiff to file an Amended Complaint within 30 days of receiving the identification information from DOCCS. Id.

On February 15 and 28, 2012, defense counsel provided responses to the information sought in the Valentin Order. Dkt. Nos. 11, 15.[8] On March 18, 2012, Plaintiff requested a 120-day extension of time to file a "complex" motion that would address several issues, including statutory tolling; Judge McMahon denied the request. Dkt. No. 13. Plaintiff made a similar request on April 11, 2012, which was also denied. Dkt. No. 18. On June 23, 2012, four months after receiving information regarding the identity of various Defendants, Plaintiff filed an Amended Complaint, naming the rest of the Defendants listed above. See Dkt. No. 20, at 14.[9]

---

Circuit have assumed that the prisoner "gave his petition to prison officials for mailing on the date that he signed it." Nash v. Kressman, No. 11 Civ. 7327 (LTS) (RLE), 2013 WL 6197087, at *4 (S.D.N.Y. Nov. 27, 2013) (quoting Torres v. Irvin, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998)). The signature page of Plaintiff's Original Complaint is dated September 14, 2011. See Compl., at 21. However, Defendants argue that "the application for in forma pauperis ["IFP"] status, which was contained in the same packet as the Complaint, was dated September 16, 2011. Thus . . . September 16, 2011 is the earliest date that the inmate could have put the complaint packet in the mailbox." Def. Mem. at 11. There is no definitive evidence indicating the documents were "in the same packet," but both the complaint and the IFP application are identically stamped as received by the Pro Se office on September 27, 2011, at 9:21 a.m. (see Dkt. Nos. 1, 2), suggesting the two documents were mailed together on September 16, 2011. See Nash, 2013 WL 6197087, at *4 n.4 (finding that filing date was date of cover letter attached to complaint as opposed to earlier date of complaint because materials were sent, stamped, and filed together). Thus, the Court presumes that the Complaint was filed on September 16, 2011. In any event, whether the filing date is September 14 or 16 is ultimately immaterial because the two-day difference does not impact any of my recommendations.

[8] Defendants' supplemental letter, dated February 28, 2012, was stamped "Received" by the United States District Court S.D.N.Y on February 29, 2012, but was not docketed until May 23, 2012. Dkt. No. 15.

[9] The signature page of Plaintiff's Amended Complaint is dated September 14, 2011, which is the same as the signature date in the Original Complaint. Compare Am. Compl., p. 13, with Compl., p. 21. However, the cover letter attached to the Amended Complaint, which indicates that Plaintiff was filing an Amended Complaint pursuant to a December 5, 2011 decision by Judge McMahon, is dated June 23, 2012. Am. Compl., p. 14. The Amended Complaint itself was not filed on the docket until June 28, 2012.

Amended summonses for all Defendants except Chill and Ercole were not issued until February 13, 2013, at which time Plaintiff was sent a Rule 4 Service Package, which included a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") allowing the U.S. Marshals to complete service on his behalf. See Dkt. Entry dated February 13, 2013. Plaintiff served the remaining Defendants between March 3, 2013 and June 13, 2013. (Dkt. Nos. 63-66, 71, 72, 78, 79, 85, 88, 95).[10]

Plaintiff sought to file a second Amended Complaint on January 4, 2013. See Dkt. No. 40. The case was referred to me on February 7, 2013 (Dkt. No. 52), and on February 22, 2013, following a pre-trial conference, I directed that Plaintiff be permitted to file a second Amended Complaint by April 26, 2013 (Dkt. No. 58). Plaintiff subsequently requested an extension, and I granted him until May 31, 2013 to further amend his complaint. Dkt. No. 74. Plaintiff failed to file a second Amended Complaint by that deadline and instead sought another extension. Dkt. No. 80. I denied Plaintiff's request on June 7, 2013. Dkt. No. 86. I also denied Plaintiff's third request for an extension on June 26, 2013. Dkt. No. 90.

On July 1, 2013, Defendants moved to dismiss Plaintiff's Amended Complaint on various grounds: failure to exhaust; failure to allege personal involvement; and failure to state a claim. Dkt. No. 91; Def. Mem., at 2. Defendants also contend that Plaintiff's action is time-barred and that his claim under the Religious Freedom Restoration Act is improper. Id. Plaintiff did not respond to Defendants' motion to dismiss, and instead, on August 14, 2013, requested yet again to file a second Amended Complaint. See Dkt. No. 104. I denied that request, and instead sua sponte extended Plaintiff's deadline to submit his opposition to the motion to dismiss from August 16, 2013 to September 27, 2013. Id. Plaintiff did not file an opposition, but on September 21, 2013 requested yet another "extension of time to file a Motion for varied relief, primarily moving for reargument/reconsideration." Dkt. No. 105 at 1. Noting that the relief sought by Plaintiff was not entirely clear, I directed that, to the extent Plaintiff was requesting an

---

[10] As discussed above, Defendants Bendheim, Phillips, Foroscij, Thorpe, Brothers, Monzon, and Benitez were not served. See supra n.2.

extension to file a second Amended Complaint, that request was denied. Dkt. No. 107. I instead granted Plaintiff "one last chance to file his opposition papers to the motion to dismiss and extend[ed] his deadline to November 11, 2013." Id. at 3. I further warned that if Plaintiff failed to "file opposition papers by November 11 (some four months after the motion to dismiss was filed), the Court will treat the motion as unopposed" and reminded Plaintiff that in his opposition "he [could] point to any information that he believes will undercut the arguments made by Defendants and [could] present any additional facts to support his claims (and, if appropriate, he [could] identify what additional discovery he still needs to fully respond to the motion or what basis exists to permit him to further amend his complaint)." Id. at 3-4. Finally, I declined to recuse myself from the case, despite Plaintiff's request that I do so. Id. at 4-6.

On November 5, 2013, Plaintiff sought yet again to file a second Amended Complaint and I denied his request. Dkt. Nos. 108, 109. Despite many opportunities to do so, he did not file any opposition to Defendants' motion to dismiss, and on November 15, 2013, I ordered that the motion would be deemed unopposed. Dkt. No. 109. Plaintiff sought an appeal of my decision and, on November 22, 2013, Judge McMahon issued an Order stating that: "This is not an 'appealable' order. An order denying permission to file additional papers or another extension of time lies within Judge Cott's discretion. However, I agree with his decision on the merits and I will not overturn it." Dkt. No. 111. Plaintiff also sought an appeal to the Second Circuit, which was subsequently dismissed. Dkt. Nos. 113, 117.

## II. DISCUSSION

### A. Standard of Review for a Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007); Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). A complaint need not include "'detailed factual allegations,'" but it must contain more than mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Therefore, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

Pro se complaints are held to less stringent standards than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also McKeown v. New York State Commission on Judicial Conduct, 377 F. Appx. 121, 122 (2d Cir. 2010). Indeed, pleadings of a pro se party should "be construed liberally 'to raise the strongest arguments [they] suggest[ ].'" Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). Still, a pro se complaint, like any other, "must state a plausible claim for relief." Id. (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)). "Dismissal of a pro se complaint is . . . appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Kinsey v. Bloomberg, No. 12 Civ. 8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y. Feb. 18, 2014).

In addition, although Plaintiff has not opposed Defendants' motion to dismiss, the failure to oppose a 12(b)(6) motion does not justify dismissal of a complaint. See Goldberg v. Danaher, 599 F.3d 181, 183-84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." Goldberg, 599 F.3d at 184 (citing McCall, 232 F.3d at 322-23). As with all 12(b)(6) motions, in deciding an unopposed motion to dismiss, the court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency" according to the principles ordinarily applicable on a motion to dismiss. Johnson v. Agros, No. 10 Civ. 8312 (PAE), 2012 WL 3564028, at *2 (S.D.N.Y. Aug. 20, 2012) (citing McCall, 232 F.3d at 322).

### B. Exhaustion of Administrative Remedies

#### 1. Legal Standard under the PLRA

The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to 'all prisoners seeking redress for any prison circumstances or occurrences,' whether it was a particular episode or an ongoing circumstance." Charles v. Gordon, No. 12 Civ. 8332 (CM) (JCF), 2013 WL 6667632, at *3 (S.D.N.Y. Dec. 17, 2013) (quoting Porter v. Nussle, 534 U.S. 516, 519 (2002)). "The PLRA requires 'proper exhaustion' of prison administrative remedies, which includes compliance with agency deadlines and procedural rules." Morrison v. Stefaniak, 523 F. App'x 51, 52 (2d Cir. 2013) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).

The Supreme Court has made clear that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Rather, failure to exhaust is an affirmative defense that must be raised and proven by defendants. Id. However, an inmate confined in a New York State prison must complete all relevant steps before he may bring a lawsuit pursuant to § 1983. See 42 U.S.C § 1997e(a). "[I]f it is clear from the face of the complaint that the plaintiff failed to exhaust administrative remedies, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." Charles, 2013 WL 6667632, at *3 (citing Stevens v. City of New York, No. 12 Civ. 1918 (JPO) (JLC), 2012 WL 4948051, at *2 (S.D.N.Y. Oct. 11, 2012)). A failure to properly exhaust remedies may be excused in only three instances: (1) where administrative remedies were not actually available to the prisoner; (2) where defendants' own actions inhibited exhaustion, constituting a waiver of the

defense; or (3) where special circumstances justify non-exhaustion. Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011) (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).[11]

The New York State Department of Corrections requires prisoners to grieve alleged misbehavior using a three-tier procedure. See, e.g., Morrison, 523 F. App'x at 51; Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009). First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC'); second, the inmate must appeal any adverse decision from the IGRC to the superintendent of the correctional facility within seven days; and, third, the inmate must appeal any adverse decision by the superintendent to the Central Office Review Committee ("CORC") within seven days. N.Y. Comp. Codes R. & Regs. tit. 7 ("N.Y.C.R.R."), § 701.5. Grievances alleging harassment by a corrections officer are considered under an expedited two-step procedure where the grievance is sent directly to the superintendent. Espinal, 558 F.3d at 125; N.Y.C.R.R. § 701.8. Then, "[i]f the grievance is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." Espinal, 558 F.3d at 125 (internal citation omitted). There is also a procedure ensuring that inmates in the SHU are able to file grievances. See N.Y.C.R.R. § 701.7 ("The following minimal standards shall be instituted to provide SHU inmates with access to the IGP.").

_____

[11] The Second Circuit has reserved the question of whether this test, set forth in Hemphill, applies in light of the Supreme Court's interpretation of the PLRA's exhaustion requirement in Woodford v. Ngo, 548 U.S. 81 (2006). See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011). However, "[c]ourts in this circuit have acknowledged the tension between Woodford and Hemphill, but have continued to use the Hemphill test in the absence of circuit authority to the contrary." Kasiem v. Switz, 756 F. Supp. 2d 570, 576 n.5 (S.D.N.Y. 2010); see also Smith v. City of New York, No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *9 (S.D.N.Y. Sept. 26, 2013) ("In the absence of a clear indication that Hemphill has been overruled, this Court has no choice but to treat it as good law."). Thus, because the Second Circuit has not held otherwise, this Court will similarly consider the exceptions provided in Hemphill.

## 2.  Analysis of Plaintiff's Efforts To Exhaust

### a.  Plaintiff Failed to Complete the Exhaustion Requirements.

Defendants argue that Plaintiff has failed to exhaust his administrative remedies for all claims, and that he has "no plausible excuse" for that failure.  Def. Mem., at 8.  Plaintiff describes his attempts to exhaust in the pro se prisoner complaint form, which is attached to the Amended Complaint.  Am. Compl., p. 15.  He states: "[w]hile in the SHU, I attempted to file two separate grievances, twice, but because all SHU mail is read before it goes out, my grievances were deliberately estopped by SHU officials, after receiving no responses, the 45 day limit had expired, thus precluding a grievance.  Upon my arrival at the next facility, I tried to forget the incidents."  Id.  Plaintiff further contends that he complained to prison authorities about the facts alleged in the complaint, noting that "[i]n the month of August, 2011, [he] wrote a letter to [Defendant Ercole] notifying him of the allegations herein.  On Sept. 3rd, 2011, [he] again wrote him with the allegations, to which [he] requested an investigation.  But, the D.S.S. there and other staff already knew of all these allegations."  Id.

To start, it is clear that Plaintiff did not complete either the two or three-step process required to properly exhaust his claims.[12]  Plaintiff does not specify which grievance procedure is applicable in his circumstances, but his efforts to exhaust are insufficient either way.  Under the non-expedited three-step process, Plaintiff did file (or attempted to file) his initial grievances, but, as he acknowledges, he took no further steps because "the 45 day limit had expired" and then, once he was relocated, he chose to try and "forget the incidents," rather than pursue an appeal.  Am. Compl., p. 15.  Plaintiff's letter to Superintendent Ercole does not constitute a further attempt to exhaust for two reasons.  First, Plaintiff himself states the purpose of the letter was to notify Ercole of the allegations in the complaint, rather than appeal his grievance.  Second, Plaintiff did not send the letter within a "reasonable" amount of time after receiving no

---

[12] Plaintiff does not specify which grievance procedure was applicable in his circumstances, but his efforts to exhaust are insufficient in any event because he did not properly grieve to the superintendent, as required by step one of the expedited procedure or step two of the non-expedited procedure.

response to his grievance, waiting until nearly three years after the incident (and one month before filing his complaint in this action).  See Garcia v. Heath, No. 12 Civ. 4695 (CM), 2013 WL 3237445, at *5 (S.D.N.Y. June 25, 2013) ("[C]ourts have recognized that a prisoner who receives no response to a § 701.5 grievance must file an appeal within a reasonable time."); Hecht v. Corr. Officer Best, No. 12 Civ. 4154 (CM), 2012 WL 5974079, at *3 (S.D.N.Y. Nov. 28, 2012) (plaintiff was obligated to appeal to the CORC "within a reasonable period of time" after failing to get a response from the superintendent).  Plaintiff's letter would also be inadequate under the expedited procedure, which requires that Plaintiff submit his grievance to the Superintendent within 21 days of the alleged occurrence.  See  N.Y.C.R.R. §§ 701.5(a)(1); 701.8(a).

Moreover, even if Plaintiff's letter to the Superintendent could be construed as a proper step in the grievance process, Plaintiff still failed to complete the final exhaustion requirement – appealing the matter to the CORC.  See, e.g., Garcia, 2013 WL 3237445, at *4 ("'[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted.'") (quoting Gardner v. Daddezio, No. 07 Civ. 7201 (SAS), 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008)); Franco v. Monroe, No. 09 Civ. 8787 (LTS) (GWG), 2012 WL 3552673, at *3 (S.D.N.Y. Aug. 13, 2012) (finding failure to exhaust because even if plaintiff's letter to superintendent could be construed as attempt to file grievance, he filed no appeal to the CORC).  Thus, given that "[P]laintiff's grievance has not been appealed to and decided by the highest body in the administrative process, [he] cannot be said to have exhausted his administrative remedies" and his claims are subject to dismissal on exhaustion grounds.  Jones v. Allen, 08 Civ. 4003 (CM), 2010 WL 3260081, at *2 (S.D.N.Y. Aug. 9, 2010) (citing Booth v. Churner, 532 U.S. 731, 735 (2000)).

### b.  Even Though Plaintiff Failed to Properly Exhaust, Dismissal is Not Warranted On This Ground.

However, even though Plaintiff failed to satisfy the mandatory exhaustion procedure, viewing Plaintiff's allegations in the light most favorable to him, the Court believes that the

14

Amended Complaint should not be dismissed for failure to exhaust administrative remedies. Defendants correctly note that the Superintendent's failure to respond to Plaintiff's grievances did not relieve Plaintiff of his duty to file an appeal. Def. Mem. at 9; see, e.g., Garcia, 2013 WL 3237445, at *5. But Plaintiff alleges that it was not merely the lack of response that caused him to improperly grieve his complaints. He maintains that his efforts to comply with the grievance requirements were stymied and that the lack of response was a result of certain Defendants impeding his access to submit grievances. Specifically, he claims that when he attempted to file two grievances while in the SHU, he was "deliberately estopped" from doing so by Green Haven officers. Am. Compl., p. 15. Though Plaintiff's remarks are certainly ambiguous, "[i]f any of the Defendants did, in fact, prevent [Plaintiff] from grieving pursuant to the [grievance program's] requirements, their exhaustion defense might be forfeited." Gayle v. Benware, No. 08 Civ. 8017 (RMB) (FM), 2009 WL 2223910, at *5 (S.D.N.Y. July 27, 2009); O'Connor v. Featherston, No. 01 Civ. 3251 (HB), 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (exhaustion may be excused at motion to dismiss stage if "an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts").[13]

Gayle addressed a situation comparable to Plaintiff's. There, the Court refused to grant Defendants' motion to dismiss on the grounds of exhaustion where Plaintiff alleged that while he was in the SHU at Green Haven, he attempted to exhaust his claims by giving his grievance to an officer, but "he never received a response to [his] grievance and was concerned that the officer did not actually mail the grievance." Gayle, 2009 WL 2223910, at *5. The Court held that "[w]hile [plaintiff's] assertions may ultimately not prove credible, at this preliminary stage the

---

[13] Though Defendants maintain that Plaintiff's "unsupported conclusion that his mail was read and suppressed" should not estop them from asserting an exhaustion defense, Def. Mem., at 9-10, the case law suggests that, at least at the motion to dismiss stage, Plaintiff's claims should be allowed to proceed. Should this case reach the summary judgment stage, Defendants will be able to re-assert the defense and may prevail if the facts are clear that there was no interference with Plaintiff's ability to file a grievance. See, e.g., Gayle v. Benware, 716 F. Supp. 2d 293, 298-99 (S.D.N.Y. 2010) (summary judgment motion granted on exhaustion grounds).

Court cannot say, as a matter of law, that they are implausible." Id. at *6. And, "although there [was] ample reason to question the veracity of [Plaintiff's] latest representations, [the Court] reluctantly conclude[d] that the Defendants' motion must be denied." Id. Similarly here, if Defendants inhibited Plaintiff's ability to exhaust his claims, they have waived their right to assert an exhaustion defense at this stage, and thus the Court declines to recommend dismissal on that ground at this time. Amador, 655 F.3d at 103 ("A prisoner may invoke the doctrine of estoppel when 'defendants took affirmative action to prevent him from availing himself of grievance procedures.'") (quoting Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006)); Hemphill, 380 F.3d at 690 (petitioner's allegations of threats may preclude defendants from asserting exhaustion defense); DeMartino v. Zenk, No. 04 Civ. 3880 (SLT) (LB), 2006 WL 1455456, at *5 (E.D.N.Y. May 25, 2006) (declining to find a failure to exhaust where plaintiff alleged that prison staff "misplaced some of his [grievance] documents and lost others" and denied him access to a photocopier); Rodriguez v. Hahn, No. 99 Civ. 11663 (VM), 2000 WL 1738424, at *2 (S.D.N.Y. Nov. 22, 2000) (refusing to dismiss on exhaustion grounds where plaintiff made "reasonable attempt" to exhaust and alleged that, while in SHU, corrections officers never mailed the grievances he gave to them). [14]

---

[14] Defendants contend that even if certain prison officials "acted in a way to prevent [ ] Plaintiff from utilizing the grievance procedure," Defendant Chill should not be estopped from asserting an exhaustion defense given the lack of allegations that he "personally did anything to stand in [Plaintiff's] way." Def. Mem., at 10. While the Second Circuit has not explicitly opined on the issue, courts in this Circuit have held that it is not required that "the action or inaction which is the basis for the estoppel be that of the particular defendant in the prisoner's case." Brown v. Koenigsmann, No. 01 Civ. 10013 (LMM), 2005 WL 1925649, at *2 (S.D.N.Y. Aug. 10, 2005) (finding that Ziemba, 366 F.3d at 163-64, "does not require a showing that [an individual defendant] is personally responsible for plaintiff's failure to complete exhaustion, as long as someone employed by DOCS is"). See also Warren v. Purcell, No. 03 Civ. 8736 (GEL), 2004 WL 1970642, at *6 (S.D.N.Y. Sept. 3, 2004) (refusing to dismiss claims against doctor on exhaustion grounds where plaintiff received conflicting information from non-party prison officials about whether re-filing of grievance was necessary); Gilbeau v. Pallito, 2012 WL 2416719, at *5 (D.Vt. May 22, 2012) (citing Brown with approval); Messa v. LeClaire, 2007 WL 2292975, at *4 (N.D.N.Y. Feb 26, 2007) (same); but see Murray v. Palmer, 2010 WL 1235591, at *5 (N.D.N.Y. Mar 31, 2010) (finding no forfeiture of exhaustion defense where no credible evidence presented that defendants interfered with filing grievance because "[g]enerally,

Plaintiff's allegation that his mail was "deliberately estopped" by "SHU officials" may also preclude a failure to exhaust defense if administrative remedies were not actually available. Hemphill, 380 F.3d at 686.[15] Gayle explains that "even if the Defendants themselves were not

a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals").

In a prior case before Judge McMahon involving an analysis of the PLRA exhaustion defense on summary judgment, several of the plaintiffs argued "that the theory of equitable estoppel prevents Defendants from raising the affirmative defense of non-exhaustion" because certain corrections officers made verbal threats and took retaliatory actions. Smith v. City of New York, No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *11 (S.D.N.Y. Sept. 26, 2013). Judge McMahon held that estoppel was not warranted because "[n]one of those acts was committed by the individual defendants" and "estoppel is generally understood to apply only to the defendant whose own actions inhibited the inmate from exhausting." Id. However, she further stated that "the allegation of threats or retaliatory acts may be relevant to an analysis of excuse on grounds other than estoppel," and directed further proceedings to address that issue. Id. at *11, 26-30. As discussed in the text, the Court recommends an alternative finding here that even if estoppel is not a valid excuse with regard to Defendant Chill, Plaintiff should still be excused from exhaustion given that the grievance process was constructively unavailable to him.

[15] Defendants contend that Plaintiff knew administrative remedies were available because he answered "Yes" to the question "Is there a prisoner grievance procedure at this facility?" on his initial complaint form. Def. Mem., at 8-9. However, a closer look at this form reveals that this question cited by Defendants is located underneath the heading "Place of Present Confinement." Am. Compl., p. 18. At the time Plaintiff completed this form, he was housed at Wende Correctional Facility, not Green Haven. Id. at 17. Therefore, it is entirely plausible that Plaintiff was acknowledging his knowledge of the procedure at Wende, and not Green Haven, where the events were alleged to have taken place. Furthermore, even if he knew that remedies were theoretically available at Green Haven, the fact remains that they may actually have been rendered unavailable as a result of actions taken by correction officers.

Defendants also argue that even assuming "officers prevented [Plaintiff's] grievances from reaching the appropriate destination," he still should have appealed to the superintendent. Def. Mem., at 9. Defendants rely on the fact that Plaintiff notified the superintendent of his complaints by letter in 2011 as evidence that he did not think such an action would be "futile." Id. However, Defendants fail to recognize that the perception of futility can vary under different circumstances. If officers in the SHU refused to mail Plaintiff's original grievance, it is certainly plausible that those actions led Plaintiff to believe it would be futile to seek an appeal because he had to send another letter through those same officers. See Kasiem v. Switz, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) ("Estoppel is found where an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible.") (internal quotations omitted). Moreover, it is also plausible that three years later, when Plaintiff was at another facility, he may have considered it no longer futile to seek relief through the superintendent.

directly involved, interference by any Green Haven staff members would have rendered the [grievance program] constructively unavailable to [Plaintiff]." 2009 WL 2223910, at *5. Here, Plaintiff alleges that he "made a reasonable attempt to file a grievance," and that he was prevented from filing that grievance by prison officials; accordingly, grievance procedures were not available to him, and "the [PLRA] does not preclude [him] from suing in federal court." Id. (internal quotations omitted). See also Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."); Thomas v. New York State Dep't of Corr. Servs., No. 00 Civ. 7163 (NRB), 2002 WL 31164546, at *2-3 (S.D.N.Y. Sept. 30, 2002) (finding issue of fact as to whether grievance procedures were available where plaintiff asserted that two officers prevented him from filing grievance).

Plaintiff's allegations that SHU officers obstructed his attempts to pursue the grievance process are far from thorough. Defendants may later prove Plaintiff's assertions to be false. However, I believe that, liberally construing his Amended Complaint, Plaintiff has presented a plausible assertion that he attempted to mail two grievance forms and his efforts were impeded. Therefore, at this stage of the proceedings, Defendants are either estopped from arguing for dismissal on exhaustion grounds or, alternatively, Plaintiff is excused from the exhaustion requirements given that administrative remedies may have been unavailable to him.

### C. The Statute of Limitations

Section 1983 actions filed in New York are subject to a three-year statute of limitations. Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013) (citing Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) and N.Y. C.P.L.R. § 214 (McKinney 2013)). This is true for Plaintiff's Eighth Amendment deliberate indifference claim, Shomo v. City of New York, 579 F.3d 176, 180–81 (2d Cir. 2009), as well as his claims under the First, Fifth, and Fourteenth Amendments. Cancel v. Mazzuca, No. 01 Civ. 3129 (NRB), 2003 WL 1702011, at *3 (S.D.N.Y. Mar. 28, 2003) (First Amendment); Jewell v. County of Nassau, 917 F.2d 738, 739-40 (2d Cir. 1990)

18

(Fifth and Fourteenth Amendments). Claims brought pursuant to § 1983 accrue when the plaintiff "'knows or has reason to know of the injury which is the basis of his action.'" Hogan, 738 F.3d at 518 (quoting Pearl, 296 F.3d at 80); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

There is an exception, however, to "the normal knew-or-should-have-known accrual date" in cases of a continuing violation. Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999); Shomo, 579 F.3d at 181. The continuing violation doctrine provides that "[w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, 'commencement of the statute of limitations period may the[n] be delayed until the last discriminatory act in furtherance of it.'" Shomo, 579 F.3d at 181 (quoting Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)). "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference] and some non-time-barred acts taken in the furtherance of that policy.'" Id. (quoting Harris, 186 F.3d at 250) (alterations added).

The Second Circuit in Shomo found the continuing violation doctrine to apply in a case where "a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." Id. at 182. Other courts have found the doctrine to apply to alleged violations of an inmate's First Amendment rights. See, e.g., Cancel, 2003 WL 1702011, at *4 (granting leave to amend complaint to add defendant whose alleged religious discrimination lasted the duration of plaintiff's incarceration on grounds of continuing violation and rejecting defendants' argument that claims would be statutorily barred); Williams v. Leonard, No. 9:11 Civ. 1158 (TJM) (TWD), 2013 WL 5467192, at *6 (N.D.N.Y Mar. 15, 2013) (rejecting defendants' statute of limitations argument where plaintiff alleged continuing

violations of his First Amendment religious rights "both before and during the statute of limitations period"), Report and Recommendation, <u>adopted in part by</u> 2013 WL 5466191 (N.D.N.Y. Sept. 30, 2013); <u>Matthews v. Connecticut</u>, No. 3:10 Civ. 325 (MRK), 2010 WL 3984645, at *6 (D. Conn. Oct. 8, 2010) (applying continuing violation doctrine to Plaintiff's First Amendment retaliation claims because "[t]he Court sees no reason why the continuing violation doctrine would apply to an Eighth Amendment deliberate indifference claim under § 1983, but not to other constitutional claims under § 1983"). <u>See also</u> <u>Wilder v. Sutton</u>, 310 F. App'x 10, 15 (7th Cir. 2009) (rejecting untimeliness argument where plaintiff's grievances recounted a continuing infringement on his freedom of religion because "[e]ach missed opportunity to worship gives rise to a separate complaint").[16]

### 1. The Original Complaint

Defendants argue that because Plaintiff's Original Complaint was filed against Defendants Chill and Ercole on September 16, 2011 (<u>see</u> <u>supra</u> n.6), the claims against them, all of which allegedly arose before September 16, 2008, are barred by the statute of limitations. Def. Mem. at 12-13.

### a. Claims Against Defendant Chill Should Not Be Dismissed as Time-Barred.

Plaintiff claims that Defendant Chill refused to provide him kosher meals and denied him access to religious services and to a rabbi, in violation of the First Amendment. Am. Compl.,

---

[16] In an employment context, the Second Circuit has held that an employer's single rejection of an employee's proposed religious accommodation is a discrete act, as opposed to a continuing violation "measured from the latest date when the employee was still prevented from observing his religious requirements in the way he had proposed." <u>Elmenayer v. ABF Freight Sys.</u>, 318 F.3d 130, 134 (2d Cir. 2003). However, the Court declined to "decide what the effect would be if the employee renews the request for an accommodation." <u>Id.</u> at 135. <u>Elmenayer</u> is thus distinguishable from any § 1983 case in which a prisoner repeatedly seeks to exercise his First Amendment religious rights.

¶¶ 4-5, 32.  However, Plaintiff does not provide the specific dates on which he was purportedly denied religious accommodations.  Def. Mem., at 12.  Defendants contend that the denials must have begun shortly after Plaintiff arrived at Green Haven, and thus "[i]t is reasonable to conclude that the denial of the religious services that Plaintiff requested occurred months before September 16, 2008."  Id. at 12-13.  Accordingly, they assert, because Plaintiff knew or should have known about the alleged injuries at a time outside the permissible statutory time period, his claims against Defendant Chill should be barred by the statute of limitations.  Id. at 13.

On the record before the Court, Defendants have not met their burden of establishing that Plaintiff's claims are untimely.  See, e.g., Smith v. City of New York, No. 12 Civ. 04890 (LGS), 2013 WL 6095458, at *3 (S.D.N.Y. Nov. 20, 2013) ("Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiff failed to plead timely claims.").  "[I]n the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time."  Harris, 186 F.3d at 250; Smith, 2013 WL 6095458, at *3.  While it may be the case that Plaintiff first became aware of Defendant Chill's actions shortly after he arrived at Green Haven, Plaintiff maintains that "[s]everal months later," Defendant Chill persisted in refusing him access to religious meals and services.  Am. Compl., ¶¶ 1-4, 6.  Moreover, Plaintiff states that "[t]hroughout his entire stay at [Green Haven], Mr. Chill very deliberately denied [Plaintiff] his right to receive kosher, attend services, holidays and [Plaintiff's] right to a Rabbi."  Id. at ¶ 32 (emphasis added).  Plaintiff thereby adequately pleads a continuing violation of his First Amendment rights.  Although Plaintiff "does not provide an exact date" for Defendant Chill's "last act" in denying his religious accommodations, Cancel, 2003 WL 1702011, at *4, he sufficiently alleges that Defendant Chill's denial of religious services was part of a "continuous series of events giv[ing] rise to a cumulative injury" for the

21

duration of his time at Green Haven, extending into the relevant statutory time period.  Shomo, 579 F.3d at 182.[17]  Consequently, where the Amended Complaint alleges a continuing violation and does not clearly demonstrate that Plaintiff's claims are out of time, the Court deems it improper at this stage to dismiss claims against Defendant Chill on timeliness grounds.

### b.  Claims Against Defendant Ercole Should Not Be Dismissed as Time-Barred.

Defendants assert that all claims against Defendant Ercole also took place prior to September 16, 2008, and thus should be similarly dismissed as time-barred.  Def. Mem., at 13. However, Defendants only focus on one alleged incident, when Plaintiff claims that he asked Defendant Ercole to be moved for medical reasons and that the move took place "[o]n or about Sept. 8, or 11, or 15, 2008."  Id. (quoting Am. Compl., ¶ 17).  Defendants neglect to address Plaintiff's allegations against Defendant Ercole in his role as a supervisor, including that he failed to properly train and supervise his staff and did not protect Plaintiff from physical assaults. Am. Compl., ¶¶ 7, 8, 33.  Specifically, Plaintiff alleges that he was denied proper medical treatment and suffered several assaults at the hands of Green Haven staff, for whom Defendant Ercole was responsible, and he alleges that these incidents occurred on or after September 23, 2008, rendering them within the statutory period.  Id. at ¶¶ 20-26.  Thus, construing Plaintiff's claims liberally, he has properly made timely allegations against Defendant Ercole which should not be dismissed on statute of limitations grounds at this juncture, given that the complaint does not "clearly show[ ] the claim[s] [are] out of time."  Harris, 186 F.3d at 250.

---

[17] Plaintiff's Amended Complaint does not specify when he arrived at Green Haven, nor have Defendants offered any evidence on that issue, but the pleadings make reference to Plaintiff being at Green Haven at least as late as November 2008 (see id. at ¶¶ 27-28), well within the three-year statute of limitations period.

## 2.  The Amended Complaint

Defendants assert that all claims against the 18 new individuals named in the Amended Complaint, which was filed on June 28, 2012, are barred by the statute of limitations.  Def. Mem., at 13-14.  Given that Plaintiff's cover letter to the Amended Complaint was dated June 23, 2012 (see supra n.9), they argue that "only events occurring after June 23, 2009 can be considered timely," and thus dismissal of all Defendants who appear for the first time in the Amended Complaint is appropriate because all of the events in the Amended Complaint occurred prior to the conclusion of December of 2008.  Id. at 14.[18]  However, Defendants fail to distinguish between two groups of Defendants: (1) those who were named as "John Does" in the caption of the Original Complaint (and were described as unknown individuals in the body of the document), and (2) those who were not "named" as Defendants in the caption, but were specifically identified and had claims asserted against them in the Original Complaint.[19]  The first group is comprised of Defendants Wahlquist, Mell, Wesley, Thorpe, Martin, Iuzinni, Speed, Fitch, and Fila.[20]  The second group includes Defendants Murphy (Compl. ¶ 9), Benitez (Compl. ¶¶ 15-19, 34-35), Monzon (Compl. ¶ 18), Foroscij (Compl. ¶ 27), Brothers (Compl. ¶ 28),

---

[18] The last possible date for Plaintiff's claims to have accrued is the day he was transferred from Green Haven to another facility.  However, Plaintiff does not provide that date in his Amended Complaint.  He does aver that he was taken to the SHU on or about September 23, 2008 and that he was held in the SHU for approximately 69 days.  Am. Compl., ¶¶ 20, 30.  He also states that he was told that he was going to be held in the SHU until he was transferred to his next facility. Id. at ¶ 31.  Construing Plaintiff's claims in the broadest light possible, Defendants' assumption – that the events giving rise to Plaintiff's allegations occurred prior to December 31, 2008 – is likely to be correct.

[19] Bendheim and Phillips are excluded from this discussion given the Court's recommendation that they should be dismissed pursuant to Rule 4(m).  See supra n.2.

[20] Defendant Wahlquist is not named or described in the Original Complaint, but the Amended Complaint indicates that Plaintiff was referring to Wahlquist when stating that he was the sergeant who "answered the emergency move request letter."  Original Compl., ¶ 20.  However, Plaintiff gives no further detail about this incident in the Original Complaint that would have served to put Walhquist on notice.

Cecilia (Compl. ¶ 31). and Koskowski (Compl. ¶¶ 10-14).[21]  The Court will start by addressing Defendants' argument for dismissal as it pertains to the first group of Defendants – the "John Docs."

### a. Plaintiff's Claims Against the "John Doe" Defendants Do Not Relate Back to the Original Complaint.

Given the Court's assumption that Plaintiff's § 1983 claims accrued at the latest by the end of December of 2008 (see supra n.18), the statute of limitations expired three years later in December of 2011.  Hogan, 738 F.3d at 517.  Plaintiff filed a timely complaint, on September 16, 2011, naming Robert E. Ercole, Rabbi Chill, and other John Does at Green Haven Correctional Facility. Compl., at 1, 21.  His Amended Complaint, however, was not filed until June 28, 2012, more than five months after the statute of limitations expired.  Am. Compl., ¶¶ 1, 14.  Therefore, Plaintiff's Amended Complaint against the newly-named Defendants may proceed only if it meets the requirements for the "relation back" of claims set forth under Rule 15(c) of the Federal Rules of Civil Procedure.  Hogan, 738 F.3d at 517.  ("Amended pleadings that meet the requirements of Rule 15(c) are considered to 'relate back' to the date of the Original Complaint.").

The Second Circuit recently reaffirmed the federal standard for relation back under Rule 15(c)(1)(C) in Hogan v. Fischer.  There, the Court held that:

> For an Amended Complaint adding a new party to relate back under Rule 15(c)(1)(C), the following conditions must be met: (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the Original Complaint, and . . . the Original Complaint [was] filed within the limitations period.

---

[21] Defendant R. Koskowski is not identified by his last name in the Original Complaint. However, Plaintiff describes him with sufficient particularity to find that he should have been on notice of the claims against him.  To wit, Plaintiff names "Mr. R" and specifically identifies his position as Deputy Superintendent of Security at Green Haven.  Compl., ¶ 10.

738 F.3d at 517 (citing Barrow v. Wethersfield Police Dept., 66 F.3d 466, 468-69 (2d Cir. 1995)).

Defendants argue that Plaintiff cannot satisfy the third criterion because "Rule 15 relation back does not apply to the situation in which a Plaintiff files a complaint naming John Does whose identities are unknown at the time, and later seeks to amend the complaint and fill in the unknown identities." Def. Mem., at 14 (citing Barrow, 66 F.3d at 468). Defendants are correct with respect to the unknown John Doe Defendants. See, e.g., Hogan, 738 F.3d at 517 ("This Circuit has interpreted the rule to preclude relation back for Amended Complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities."); Moody v. Town of Greenburgh, No. 09 Civ. 6579 (GAY), 2012 WL 1174754, at *2 (S.D.N.Y. Apr. 9, 2012) ("It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.") (quoting Aslandis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993)). Although "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties . . . [,] the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." Barrow, 66 F.3d at 470. Accordingly, Plaintiff's claims alleged in the Amended Complaint against the John Doe defendants do not relate back under Rule 15(c)(1)(C).[22]

However, even if a plaintiff's claims are barred by Rule 15(c)(1)(C), the Second Circuit has held that an amended pleading asserting § 1983 claims against John Doe defendants may still relate back under Rule 15(c)(1)(A). Hogan, 738 F.3d at 518. "Rule 15(c)(1)(A) permits an amended pleading to relate back when 'the law that provides the applicable statute of limitations

---

[22] In addition to the 18 new Defendants, Plaintiff also includes another category of "John Doe" defendants in the caption of his Amended Complaint. Plaintiff has not made any attempt to further identify these John Does, and even had he done so, any claims against them would not relate back for the reasons set forth above. Accordingly, the Court declines to address any potential claims against these Defendants.

allows relation back.'" Id. (quoting Fed. R. Civ. P. 15(c)(1)(A)). In Hogan, the Court explained

that New York state law sets forth the applicable statute of limitations, and it "provides a more

forgiving principle of relation back in the John Doe context, compared to the federal relation

back doctrine under Rule 15(c)(1)(C)." Id. Under § 1024 of the New York Civil Practice Law

and Rules ("CPLR"), a complaint can relate back if a party meets two requirements. "First, the

party must exercise due diligence, prior to the running of the statute of limitations, to identify the

defendant by name. Second, the party must describe the John Doe party in such form as will

fairly apprise the party that [he] is the intended defendant." Id. at 519 (internal quotations and

citations omitted). If a plaintiff fulfills these conditions, he "must then 'ascertain the identity of

unknown '[John] Doe' parties, and . . . serve process upon them, within 120 days from filing.'"

Williams v. United States, No. 07 Civ. 3018 (RJS) (THK), 2010 WL 963474, at *12 (S.D.N.Y.

Feb. 25, 2010) (quoting Bumpus v. N.Y.C. Transit Auth., 66 A.D.3d 26, 31 (2d Dep't 2009)),

Report & Recommendation, adopted by 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010). "If a

Plaintiff meets these requirements, then the limitations period is tolled between the filing of his

complaint and the day he serves the proper defendant." Fisher v. County of Nassau, No. 10 Civ.

0677 (JS) (ETB), 2011 WL 4899920, at *4 (E.D.N.Y. Oct. 13, 2011) (citing Williams, 2010 WL

963474, at *12).

　　　Here, Plaintiff cannot satisfy the first requirement of § 1024, as he failed to act with due

diligence in identifying the John Doe Defendants prior to filing his Original Complaint and the

running of the statute of limitations. Hogan, 738 F.3d at 519; Williams, 2010 WL 963474, at

*12-13. The events giving rise to Plaintiff's allegations all occurred in mid to late 2008, but

"Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the

three years that followed," waiting until the statute of limitations had nearly run to file his

complaint. Williams, 2010 WL 963474, at *13. In that time, he could have served discovery

demands upon the known parties, sought disclosures pursuant to a Freedom of Information Law

("FOIL") request, or written letters to the Attorney General's Office. Id. (citing Bumpus, 66

A.D.3d at 33-34). Cf. Hogan, 738 F.3d at 519 (plaintiff met first requirement under § 1024 in

that he "diligently sought to identify the "John Doe defendants" by submitting "multiple discovery requests to the Attorney General's office"); Mabry v. New York City Dept. of Corrections, No. 05 Civ. 8133 (JSR) (JCF), 2008 WL 619003, at *6 (S.D.N.Y. March 7, 2008) (allowing relation-back where plaintiff's first complaint was well within statute of limitations and she "aggressively sought the identities of the defendants"). Given Plaintiff's lack of diligence, I decline to recommend the application of the relation-back doctrine under New York law for the John Doe Defendants.

Plaintiff does briefly refer to the fact that in September 2011 he requested that Defendant Ercole conduct an investigation regarding his allegations, and notes that his "F.O.I.L.'s" were not answered. Am. Compl., p. 15.  However, if this was a last-minute attempt to obtain further information about his claims, it is insufficient to establish due diligence.  See, e.g., Temple v. New York Community Hosp. of Brooklyn, 89 A.D.3d 926, 928 (2d Dep't 2011) (finding no due diligence under § 1024 given lack of pre-filing discovery and noting that plaintiff's "limited discovery demands . . . served prior to the expiration of the statute of limitations" was insufficient to show diligence because "when the responses received were less than adequate, the plaintiff failed to promptly seek further discovery").  See also Maccharulo v. Gould, 643 F. Supp. 2d 587, 596-97 (S.D.N.Y. 2009) (finding lack of diligence under federal rule where Plaintiff waited until end of statutory period to attempt to identify proper defendants).

Plaintiff also notes in his Original Complaint that he "is a neophyte of federal civil law and procedure" and thus was "unable to come up [with] meaningful facts, such as approximate dates, much less actual dates, actual names or physical description[s] of complained of staff." Compl., at p. 5.  He further asserts that he was robbed of "a large amount of personal paper work, that included documents, dates and names of staff and actions at [Green Haven]." Id.  Assuming the truth of these allegations, the fact remains that he was allegedly deprived of pertinent information in the fall of 2008. Am. Compl., ¶¶ 17, 18, 29.  Plaintiff offers no justification as to why he could not have sought additional information as to the John Doe Defendants in the subsequent three years after he was transferred from Green Haven. "While the Court recognizes

Plaintiff's limitations, given his incarceration and pro se status, Plaintiff must show that he exercised some due diligence in an attempt to identify the [John Doe] Defendants prior to filing the Complaint." Williams, 2010 WL 963474, at *13.

Finally, given Plaintiff's delay in filing his complaint, once he received the responses to the Court's Valentin order, the statute of limitations had run. Then, despite Judge McMahon's December 5, 2011 Order directing him to file an Amended Complaint within 30 days of receiving the responses (see Dkt. No. 9) – and the Attorney General's Office having provided information to Plaintiff on February 29, 2012 (see Dkt. No 11) – Plaintiff waited four months to do so. Thus, the John Doe Defendants should be dismissed because Plaintiff's "'failure to act diligently to ascertain the unidentified defendant's name subjects the complaint to dismissal as to that party.'" Fisher, 2011 WL 4899920, at *4 (quoting N.Y. C.P.L.R. § 1024). [23]

Nor can Plaintiff rely on New York's relation-back doctrine set forth in N.Y. C.P.L.R. § 203(c). "Under New York's relation-back rule, amendments relate back to timely filed pleadings when (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well." Fisher, 2011 WL 4899920, at *5 (internal

---

[23] Some District Courts have held that, under the federal relation-back doctrine, "[w]here a plaintiff tries diligently during the limitations period to ascertain the identities of the intended defendants, failure to ascertain the correct names within the period, combined with some 'John Doe' or other generic identification in the pleading, may suffice to establish a factual 'mistake' supporting relation back." Maccharulo, 643 F. Supp. 2d at 596-97 (S.D.N.Y. 2009) (citing Byrd v. Abate, 964 F. Supp. 140, 145 (S.D.N.Y. 1997)); see also Twine v. Four Unknown N.Y. Police Officers, No. 10 Civ. 6622 (DAB) (JLC), 2012 WL 6184014, at *16 (S.D.N.Y. Dec. 12, 2012), Report & Recommendation, adopted by 2013 WL 314447 (S.D.N.Y. Jan. 25, 2013); Gonzalez v. in Charge of Barber Shop on Duty on May 13, 1999, No. 99 Civ. 3455 (DLC), 2000 WL 274184, at *4-5 & n.6 (S.D.N.Y. Mar. 13, 2000). To the extent this exception applies post-Hogan, the Court does not believe it should apply in this case, given Plaintiff's lack of diligence in ascertaining the identities of unknown defendants, as discussed above.

quotations omitted). Here, there is no unity of interest between Defendants Chill and Ercole and the newly-added individual defendants. In a § 1983 action, "each individual defendant's liability will be determined with regard to that defendant's particular acts or omissions." Maccharulo, 643 F. Supp. 2d at 597 (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Thus, because "the claims against the various Defendants would not necessarily stand or fall together, the unity of interest requirement cannot be met, and relation back is unavailable to [Plaintiff] under New York law." Id. For these reasons, Defendants' motion to dismiss on statute of limitations grounds should be granted as to Defendants Wahlquist, Mell, Wesley, Thorpe, Iuzinni, Speed, Fitch, and Fila.

### b. Plaintiff's Claims Against Defendants Described in the Original Complaint Should Not Be Dismissed as Time-Barred.

As stated above, Defendants Murphy, Benitez, Monzon, Foroscij, Brothers, Cecilia, and Koskowski were not named in the caption of the Original Complaint, and Defendants assert that claims against them should similarly be dismissed as time-barred. However, all of these Defendants (except Koskowski) were identified by name in the body of Plaintiff's Original Complaint, which was timely filed. While the merits of Plaintiff's allegations against these individuals may ultimately not withstand scrutiny, the Court recommends that the claims against these defendants, with the exception of Defendant Monzon, should not be dismissed as statutorily barred because Plaintiff intended them to be defendants in his Original Complaint.

While Rule 10(a) of the Federal Rules of Civil Procedure requires that the caption of a pleading name all the parties to a lawsuit, "the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim." E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 580, 139 F. Supp. 2d 512, 525 (S.D.N.Y. 2001) (internal quotations omitted). Rather, in deciding whether an entity has properly been made a party to a lawsuit, the court should consider "'[t]he caption, pleadings, service of process and other indications of the intent of the pleader.'" Id. (quoting Nationwide Mut. Ins. Co. v. Kaufman, 896 F. Supp. 104, 109 (E.D.N.Y. 1995)). See also Rice v. Hamilton Air Force Base

29

Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[T]he question of whether a defendant is properly in a case is not resolved by merely reading the caption of a complaint. Rather, a party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."). Indeed, courts have found pro se complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants. Ocasio v. Riverbay Corp., No. 06 Civ. 6455 (PAC) (KNF), 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007) (finding that text of complaint established individual as intended defendant despite lack of specificity in caption); Gibson v. Brown, No. 12 Civ. 622 (KAM) (RLM), 2012 WL 1744845, at *1 (E.D.N.Y. May 16, 2012) (deeming caption amended to include defendants listed in body of complaint but not named in original caption); O'Neal v. County of Nassau, 992 F. Supp. 524, 531 (E.D.N.Y. 1997) (finding plaintiff sufficiently alleged personal involvement of certain individuals even though he failed to name them as party-defendants in the caption or body of the complaint); Trackwell v. United States Gov't, 472 F.3d 1242, 1243-44 (10th Cir. 2007) ("[I]n a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are."); Bothwell v. Brennan, 2014 WL 953500, at *5 (N.D. Cal. Mar. 6, 2014) (finding defendant sufficiently identified in the body of the complaint and construing defendant as already named rather than dismissing with leave to amend).

Here, it is plain that Plaintiff intended to bring claims against Defendants Murphy, Benitez, Brothers, Foroscij, Cecilia, and Koskowski. With regard to Defendant Murphy, Plaintiff alleges that "Mr. Murphy, a Sgt., on or about Sept. 15, 2008, . . . deliberately and negligently performed what he knew was a closed and critically deficient investigation of false allegations." Compl., ¶ 9. Plaintiff argues that "C.O. Benitez" denied him medically necessary moves within Green Haven, retaliated against him by ransacking his cell, and stole various items from him. Id. at ¶¶ 15-19, 34-35. Defendant Brothers is also alleged to have robbed Plaintiff of

30

his personal items. Id. at ¶ 28. With regard to Defendant Foroscij, Plaintiff maintains that on November 3, 2008, while he was in the SHU, Foroscij "purposely denied [him] [his] kosher breakfast tray." Id. at ¶ 27. Defendant Cecilia is alleged to have known that Plaintiff was assaulted and that there were false charges against him; further, Plaintiff claims, Defendant Cecilia allegedly persuaded him not to defend his administrative segregation ticket. Id. at ¶ 31. Finally, as to Defendant Koskowski, Plaintiff alleges that he failed to properly dismiss Plaintiff's administrative ticket, that he knew Plaintiff had been assaulted, and that he denied Plaintiff necessary medical care. Id. at ¶¶ 10-14, 33.[24] Thus, affording it a liberal interpretation, the Court construes Plaintiff's pro se pleadings to have asserted claims against the aforementioned defendants, despite the failure to list them in the caption.

With respect to Defendant Monzon, Plaintiff does not allege sufficient facts against him to establish that he was an intended defendant. The only time he is mentioned in the Original Complaint involves an incident where Plaintiff asked Defendant Benitez about his missing property and, in response, "C.O. Mon[z]on laughed." Id. at ¶ 18. Plaintiff does not allege, as he does with other Defendants, that Monzon persistently mocked or taunted him, attacked him physically or emotionally, or confiscated any of his belongings. The Court cannot infer from Plaintiff's sole allegation against Monzon that Plaintiff intended him to be held liable under § 1983. Accordingly, Monzon should not be considered a defendant named in the original complaint, and any claim against him should be dismissed for failure to relate back.[25]

---

[24] As discussed above (see supra n.21), Plaintiff does not specifically name Defendant Koskowski, but clearly states that he was Deputy Superintendent of Security at the time. Compl., ¶ 10.

[25] Moreover, even if Monzon were considered to be a proper Defendant, the claim against him lacks merit, as "[l]aughter, verbal harassment or even spitting by prison officials, when unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right." Walker v. Shaw, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *12 (S.D.N.Y. June 23, 2010) (internal quotations omitted) (finding plaintiff failed to raise deliberate indifference claim against two officers who laughed when he asked to be transferred).

**c.  In the Alternative, the Claims Against the Defendants
Described in the Original Complaint Should Be Deemed to
Relate Back.**

Even if the descriptions of Murphy, Benitez, Brothers, Foroscij, Cecilia, and Koskowski

in the Original Complaint are insufficient to consider them to have been named as original

defendants, Plaintiff also satisfies the relation-back requirements under Rule 15(c).  Hogan, 738

F. 3d at 517.  To start, the "new claims" clearly arose out of conduct set out in the original

pleading; in fact, the Amended Complaint is virtually identical to the Original Complaint, except

for the substitution of various names of defendants.  Plaintiff can also satisfy the second

condition – that the added parties must have received sufficient notice of the claims against them

so as not to be prejudiced in mounting a defense – because these Defendants had constructive

notice.  Indeed, "'the court can impute [constructive notice] of a lawsuit to a new defendant

government official through his attorney, when the attorney also represented the officials

originally sued, so long as there is some showing that the attorney knew the additional

defendants would be added to the existing suit.'"  Mabry v. N.Y.C. Dep't. of Corr., No. 05 Civ.

8133 (JSR) (JCF), 2008 WL 619003, at *5 (S.D.N.Y. March 7, 2008) (quoting Muhammad v.

Pico, No. 02 Civ. 1052 (AJP), 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003)).  See also

Feliciano v. Cnty. of Suffolk, No. 04 Civ. 5321 (JS) (AKT), 2013 WL 1310399, at *8 (E.D.N.Y.

March 28, 2013) ("'Constructive notice is derived from the presumed knowledge of the attorney

who represents the original defendant(s) and who would represent the prospective defendant(s) if

leave to amend were granted.'") (quoting Smith v. Westchester Cnty. Dep't of Corr., No. 07 Civ.

1803 (SAS), 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012)).

Here, the individual defendants should be deemed to have constructive notice where the

New York State Attorney General's Office was aware of Plaintiff's lawsuit, having responded to

the Original Complaint on behalf of the initial defendants, and was also aware that Plaintiff

sought to add these new defendants, given the Court's Valentin Order.  Feliciano, 2013 WL

1310399, at *8 (holding defendant had constructive notice where original complaint described

John Does, "thus alerting the Suffolk County Attorney of the need to identify those individuals); Mabry, 2008 WL 619003, at *5 (finding notice requirement satisfied where Corporation Counsel was aware of lawsuit and knew identities of individuals that plaintiff sought to join); Muhammad, 2003 WL 21792158, at *20 (finding constructive notice where newly added defendant was DOCCS employee being represented, along with all other defendants, by Attorney General's office, original complaint "clearly made a claim" against unnamed defendant, and Amended Complaint merely added his name).

Plaintiff also satisfies the third relation-back requirement: that a party "should have known that, but for a mistake of identity, the original action would have been brought against it." Plaintiff's mistake with regard to Defendants Benitez, Brothers, Murphy, Cecelia, Koskowski, and Foroscij was that he failed to list them in the caption. This is not the same as a plaintiff who does not name certain Defendants because he is unsure of their identity. Cf. Vital v. New York, 136 Fed. Appx. 393, 396 (2d Cir. 2005) ("'Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'") (quoting Barrow, 66 F.3d at 470). Rather, Plaintiff did know who these individuals were, as evidenced by his descriptions of them by name or position in the text of the Original Complaint. Where a plaintiff fails to list a party in the caption, mislabels the proper defendant, or incorrectly spells his name, courts generally will grant leave to correct the mistake under Rule 15. See, e.g., Mosley v. Jablonsky, 209 F.R.D. 48, 52-53 (E.D.N.Y. 2002) (finding pro se plaintiff's failure to name individual defendants in caption could be characterized as mistake under Rule 15(c) where complaint set forth allegations of defendants' conduct); Sokolski v. Trans Union Corp., 178 F.R.D. 393, 399 (E.D.N.Y. 1998) ("Where a plaintiff mislabels the proper defendant and/or incorrectly spells its name, courts generally grant the plaintiff leave to correct the mistake.") (citing Datskow v. Teledyne, Inc., 899 F.2d 1298, 1302 (2d Cir. 1990)). Indeed, a plaintiff's knowledge of the proper party's existence does not preclude making a mistake within the meaning of Rule 15(c); rather, the focus is on "whether the [party to be added] knew or should have known that, absent some mistake, the

action would have been brought against him." Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 548, 552 (2010). Here, as discussed above, the newly-added defendants had constructive notice that an action would be brought against them, and accordingly, Plaintiff satisfies the third relation-back requirement. See Mosley, 209 F.R.D. at 53 (officer defendants' attorneys "should have known that, given the deficiencies of the original complaint, [the officers] should have been named, and would, when the mispleading became evident, be added.").

Plaintiff cannot, however, satisfy the final relation-back condition requiring that the second and third criterion occurred within 120 days of serving the summons and original complaint. Defendants were not served with the Original Complaint within the 120 days mandated by Rule 4(m), nor by July 25, 2012 – the extended deadline to serve Defendants Chill or Ercole. See Dkt. No. 19. Nonetheless, courts must extend a plaintiff's time for service upon a showing of good cause, and may grant a discretionary extension where deemed appropriate. See Fed. R. Civ. P. 4(m); Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007); Songhorian v. Lee, No. 11 Civ. 36 (CM), 2012 WL 6043283, at *3 (S.D.N.Y. Dec. 3, 2012). "'Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" Park Plus, Inc. v. Ardeon Realty Corp., No. 13 Civ. 6917 (KPF), 2014 WL 338543, at *1 (S.D.N.Y. Jan. 28, 2014) (quoting Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 419 (S.D.N.Y. 2013)).

Here, given the lenient standards afforded to pro se litigants, I recommend excusing Plaintiff's failure to timely serve the Defendants on the grounds of good cause. In Judge McMahon's initial order of service, she directed Plaintiff to file an Amended Complaint officially naming the remaining defendants. Dkt. No. 9. She further stated that, if necessary, the Clerk of Court would issue an Amended Summons and the Pro Se Office would send Plaintiff an amended Rule 4 service package, at which point he would have 120 days to effectuate service for

34

the additional defendants. Id.[26]  Subsequently, on June 22, 2012, Judge McMahon granted

Plaintiff an extension of service for Defendants Ercole and Chill.  Dkt. No. 19.  Within a matter

of days, Plaintiff filed his Amended Complaint.  Dkt. No. 20.  Amended summonses were also

issued, but only for Defendants Chill and Ercole, and Plaintiff was mailed forms to have the U.S.

Marshals complete service for Chill and Ercole on his behalf.  See Dkt. Entries dated July 3,

2012.  Plaintiff completed those forms and service was effected upon both those Defendants.

Dkt Nos. 23, 30.

However, contrary to Judge McMahon's Order, summonses were never issued for the

additional Defendants after Plaintiff filed his Amended Complaint, and Plaintiff does not appear

to have been sent an amended service package at that time.  On October 17 and 24, 2012,

Plaintiff wrote to the Pro Se Office of the Court requesting additional copies of various

documents required for service.  See Dkt. No. 31.  No summonses were issued and no forms

were sent.  Plaintiff renewed his request on December 21, 2012 and January 9, 2013, without

result.  Dkt. Nos. 39 and 41.  On February 3, 2013, Plaintiff again sought the requisite service

forms.  Dkt. No. 54.  Finally, on February 13, 2013, summonses were issued for the remaining

Defendants in the case and Plaintiff was mailed a service package.  See Dkt. Entries dated

February 13, 2013.  Plaintiff promptly filled out the forms, and Defendants were served

thereafter.

As an initial matter, Plaintiff did technically comply with Judge McMahon's Order to

serve the Amended Complaint within 120 days of the issuance of the amended summons.

Moreover, his failure to serve the newly-added Defendants at an earlier point in time was not a

result of his inaction, but rather due to judicial oversight.  As an incarcerated pro se plaintiff, he

relied on the Court to provide the requisite service forms so that the U.S. Marshals Service could

effectuate service, and those forms were not provided for several months despite multiple

---

[26] Judge McMahon referred to all Defendants other than Chill and Ercole as the "John Doe"
Defendants, but in Plaintiff's letters, he distinguishes between the "John Doe" Defendants and
the other Defendants described in the Complaint.  See Dkt. No. 39.

requests.  Cases in this district make clear that courts should excuse a prisoner's failure to effect timely service when he is not at fault.  See, e.g., Walker v. Schult, 717 F.3d 119, 123 (2d Cir. 2013) ("[F]ailure of the U.S. Marshals Service to properly effect service of process constitutes 'good cause' for failure to effect timely service."); Covington v. Dibiase, No. 97 Civ 0257 (TJM) (GJD), 1998 WL 760261 (N.D.N.Y. Oct. 30, 1998) (finding good cause for failure to effect service where Plaintiff maintained he was never directed to complete a USM 285 form for the named defendant in this action and completed form promptly once provided).  Consequently, Plaintiff has good cause for his delay in service, thereby satisfying the final requirement for relation-back purposes.  Therefore, the Court recommends denying Defendants' motion to dismiss the claims against Defendants Murphy, Benitez, Foroscij, Brothers, Cecilia, and Koskowski on the ground that they are time-barred, and granting the motion with respect to Defendant Monzon.

### D.  Requirement of Personal Involvement Under § 1983

The Court now turns to the substance of Plaintiff's claims, first setting forth the legal standard requiring personal involvement in § 1983 cases, and second, considering its applicability to Plaintiff's various claims.

"'Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  A "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

Traditionally, supervisory personnel may be considered "personally involved" if a plaintiff plausibly alleges that the defendant:

(1) participated directly in the alleged constitutional violation;

(2) failed to remedy the wrong after being informed of it;

(3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

36

(4) was grossly negligent in supervising subordinates who committed the wrongful acts; or,

(5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating there were ongoing unconstitutional acts.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). Some courts have questioned the vitality of these factors given the heightened pleading standards imposed by the Supreme Court in Iqbal. See Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's muster — a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), aff'd 387 F. App'x 55 (2d Cir. 2010); Newton v. City of New York, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived" post-Iqbal.) The Second Circuit has yet to rule on the question. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but declining to reach the issue).[27]

However, the majority of courts (including Judge McMahon) have held that "even after the U.S. Supreme Court's decision in Iqbal, these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.'" Hernandez v. Goord, No. 01 Civ. 9585 (SHS), 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) (quoting Qasem v. Toro,

---

[27] In a First Amendment retaliation case, the Second Circuit held that "[a] supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others." Rolon v. Ward, 345 F. App'x 608, 611 (2d Cir. 2009) (citing Hayut v. State of Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003)).

737 F. Supp. 2d 147, 152 (S.D.N.Y. 2010)). See also Ramey v. Perez, No. 13 Civ. 00017 (CM), 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014) (McMahon, J.) ("Colon remains the standard in this Circuit for deciding whether personal involvement by supervisory officials is sufficiently alleged in the context of the Eighth Amendment."); Mercier v. Kelly, No. 10 Civ. 7951 (ALC) (JCF), 2013 WL 4452486, at *6 (S.D.N.Y. Aug. 19, 2013) ("[T]he majority view is where 'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in Colon v. Coughlin may still apply.'") (quoting Shepherd v. Powers, No. 11 Civ. 6860 (LTS) (RLE), 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012)); Martinez v. Perilli, No. 09 Civ. 6470 (WHP), 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he five Colon categories still apply after Iqbal.").[28]

### E. Plaintiff's Freedom of Religion Claims

#### 1. Plaintiff Does Not Have a Viable Claim Under the RFRA.

Plaintiff alleges that throughout his entire stay at Green Haven, Defendant Chill "deliberately denied [Plaintiff] his right to receive kosher, attend services, holidays and [his] right to a Rabbi." Am. Compl. ¶ 32. He contends that these actions are in violation of the Religious Freedom Restoration Act ("RFRA"). However, Plaintiff's RFRA claim is barred by the Supreme Court's finding that the statute was unconstitutional. City of Boerne v. Flores, 521

---

[28] Courts upholding the five categories distinguish Iqbal from cases where the alleged underlying constitutional violation does not involve discriminatory intent. See, e.g., Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (finding Colon's personal involvement analysis to apply where plaintiff's claim does not require showing of discriminatory intent); Jackson v. Goord, 664 F.Supp. 2d 307, 324 & n.7 (S.D.N.Y. 2009) (holding that Colon standard is unaffected by Iqbal in deliberate indifference case, because Iqbal "involved discriminatory intent"). To the extent that Plaintiff does seek to hold Defendants Ercole and Koskowski liable for failing to prevent "sexual orientation discrimination, conviction discrimination, [and] racial discrimination," (Am. Compl., ¶ 33), those claims should be dismissed. As a threshold matter, Plaintiff does not make any claim that he is a member of any protected class. Furthermore, even if the Green Haven staff did possess some discriminatory animus, the Supreme Court has "explicitly rejected the argument that, 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'" Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) (quoting Iqbal, 556 U.S. at 677).

U.S. 507 (1997) (overturning RFRA on the basis that Congress had exceeded the scope of the Fourteenth Amendment enforcement clause).  Accordingly, Plaintiff's claim pursuant to the RFRA should be dismissed.

### 2.  Plaintiff's First Amendment Free Exercise Claim.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003).  However, the First Amendment protections for inmates are not absolute: the constitutionality of a restriction on a prisoner's religious practices is "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Id.  In evaluating a free exercise of religion claim, courts must consider "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988).  See also Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010) ("Under the First Amendment . . . a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'") (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)).  In order to establish a violation of the First Amendment, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006)).  See also Leach v. New York City, No. 12 Civ. 3809 (PAC) (JCF), 2013 WL 3984996, at *5 (S.D.N.Y. Aug. 2, 2013) ("To establish a free exercise claim, an incarcerated plaintiff must demonstrate that the targeted policy or practice constitutes a [substantial] burden on his religious beliefs."); Pugh v. Goord, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (same).  "The substantial burden requirement is not met by a de minimis imposition on the free exercise of religion." Leach, 2013 WL 3984996, at *5 (citing McEachin

39

v. McGuinnis, 357 F.3d 197, 203 n.6 (2d Cir. 2004) ("There may be inconveniences [regarding denial of religiously required food] so trivial that they are most properly ignored.")).

### a.  Right to Receive Kosher Meals

It is clearly established that "a prisoner has a right to a diet consistent with his or her religious scruples." Ford, 352 F.3d at 597 (citing Kahane v. Carlson, 527 F.2d 492 (2d Cir. 1975)). See also McEachin, 357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."). Absent any legitimate governmental interest, prison authorities must accommodate the right of Orthodox Jews to observe a Kosher diet. Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975) (reaffirmed in Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir. 1992)); Butler v. Hogue, No. 08 Civ. 264 (GLS) (DRH), 2010 WL 4025893, at *4 (N.D.N.Y. Feb. 4, 2010) ("Subscription to a kosher diet constitutes a material tenet of religion consistently found entitled to protection under the Free Exercise Clause.") (citing Jackson v. Mann, 196 F.3d 316, 320-21 (2d Cir. 1999)), Report and Recommendation, adopted by 2010 WL 4025886 (N.D.N.Y. Oct 13, 2010).

### i.    The Motion to Dismiss the Claim Against Defendant Chill For Failure to Provide Kosher Meals Should Be Denied.

Plaintiff has pleaded the elements of a plausible claim that his sincerely held religious beliefs were substantially burdened. He contends he is "a type of Messianic Jew" who observes a Kosher diet. Am. Compl., ¶ 4.[29] Further, Plaintiff's complaint, "when viewed in the light most favorable," "alleges that [Defendant Chill] significantly interfered with [his] religious beliefs." McEachin, 357 F.3d at 203. Plaintiff asserts that he made multiple requests to receive Kosher meals in accordance with his religious beliefs, only to be "deliberately ignored for months" by Defendant Chill. Am. Compl., ¶¶ 4-6. Indeed, Plaintiff claims that he was deliberately denied

---

[29] For the sake of the present motion, Defendants assume without conceding that Plaintiff's religious beliefs are genuinely held. Def. Mem., at 12.

the right to receive Kosher meals for the entirety of his incarceration at Green Haven. Id. at ¶¶ 4, 32. [30] This complete deprivation, as alleged, amounts to a significant, nontrivial burden on Plaintiff's rights under the Free Exercise clause such that, at least at this stage, the Court cannot recommend dismissal of the First Amendment claim against Rabbi Chill, particularly given Defendant's failure to offer any legitimate reason for denying kosher meals. McEachin, 357 F.3d at 203 (reversing district court's dismissal of plaintiff's claim that First Amendment rights were violated when defendants imposed restrictive diet and deprived him of blessed food in observance of Ramadan); Pagan v. Westchester County, No. 12 Civ. 7669 (PAE) (SN), 2014 WL 982876, at *20 (S.D.N.Y. March 12, 2014) (denying motion to dismiss where plaintiffs alleged they were denied religious accommodations because only food offered that complied with their religious requirements was "undercooked or rotten"); Turner v. Sidorowicz, No. 12 Civ. 7048 (NSR), 2014 WL 641454, at *10 (S.D.N.Y. Feb. 14, 2014) (finding plaintiff plausibly asserted free exercise claim given allegations that kosher diet was suspended without explanation and in retaliation for grievances filed); Modlenaar v. Liberatore, No. 07 Civ. 6012 (CJS), 2009 WL 2179661, at *4-5 (W.D.N.Y. July 22, 2009) (refusing to dismiss claim against defendant alleged to have denied kosher meals, even though kosher loaf was available, and where defendants offered no legitimate penological reason for deprivation); Ramsey v. Goord, 661 F. Supp. 2d 370, 397 (W.D.N.Y. 2009) (denying summary judgment where court found that missing more than 30 days of kosher meals constituted more than de minimis injury to plaintiff).

### ii. The Motion to Dismiss the Claim Against Defendant Foroscij Should Be Granted.

Plaintiff also alleges that on November 3, 2008, Defendant Foroscij "purposely denied [him] [his] kosher breakfast tray." Am. Compl., ¶ 27. This is the only allegation against

---

[30] Confusingly, Plaintiff also writes that he "had to go around Mr. Chill to receive his kosher food." Am. Compl., ¶ 4. It is thus unclear whether Plaintiff did in fact receive Kosher meals, in spite of Defendant Chill's alleged refusal to provide them. Liberally construing the pleadings, the Court recommends allowing this claim to proceed at this time, but notes that at a later stage, dismissal may be appropriate if evidence comes to light revealing that Plaintiff was not entirely deprived of religious meals.

Defendant Foroscij.  The denial of one meal does not substantially burden Plaintiff's rights under the Free Exercise clause as it constitutes no more than a de minimis harm.  See, e.g., Leach, 2013 WL 3984996, at *2 ("The intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a de minimis imposition falling far short of the substantial burden requirement."); Phillips v. Lavalley, No. 9:12 Civ. 609 (NAM) (CFH), 2014 WL 1202693, at *7 (N.D.N.Y. March 24, 2014) (citing cases for the proposition that "[t]he denial of three kosher meals, on three separate occasions, [does] not constitute more than a de minimis burden"); Washington v. Afify, __ F. Supp. 2d __, 2013 WL 4718693, at *5 (W.D.N.Y. Sept. 3, 2013) ("Courts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim."); Cato v. Ramos, No. 11 Civ. 300A, 2012 WL 4113187, at *6 (W.D.N.Y. Aug. 10, 2012) (granting motion to dismiss where "at most plaintiff lost holy day meals on fifteen occasions over the two-year period alleged, and such is a de minimis deprivation of his religious rights"), Report and Recommendation, adopted by 2012 WL 4113067 (W.D.N.Y. Sept. 19, 2012).  Accordingly, the claim against Defendant Foroscij should be dismissed.

### b.  The Motion to Dismiss the Claim Against Defendant Chill for Denying Access to Religious Services Should Be Denied.

The Second Circuit has held that "it is well established that prisoners have a constitutional right to participate in congregate religious services . . . . Confinement in keeplock does not deprive prisoners of this right."  Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) (citations omitted).  See also Ford, 352 F.3d at 597 ("[A] prisoner's free exercise right to participate in religious services is not extinguished by his or her confinement in special housing or keeplock.").  But as previously noted, an inmate's freedom of religion must be balanced against "'the interests of prison officials charged with complex duties arising from administration of the penal system.'"  Id. at 588 (quoting Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990)).

Plaintiff asserts that Defendant Chill deliberately denied him his right to attend services and celebrate religious holidays for his entire stay at Green Haven. Am. Compl., ¶ 32.  While Plaintiff provides no other details in support of this claim, the Court believes that this is sufficient, albeit barely, at the pleading stage to allege a substantial burden on his beliefs in that he was completely denied any occasion to worship or practice his religion, particularly given that Defendants offer no legitimate penological objective that might justify such a denial.  See Young, 866 F.2d at 570 ("A prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests" and it is "incumbent upon prison officials to make such a showing in order to prevail on a motion to dismiss") (internal quotations omitted); Washington v. Gonyea, 538 F. App'x 23, 27 (2d Cir. 2013) (finding that while plaintiff's complaint did not "specify which official denied him religious services in [the SHU], a liberal reading of the complaint gives rise to a plausible inference that [defendants] were involved either directly or indirectly, and [plaintiff] has therefore adequately pled a violation of his First Amendment rights"); Nji v. Heath, 13 Civ. 200 (CM), 2013 WL 6250298, at *11-12 (S.D.N.Y. Dec. 2, 2013) (allowing free exercise claim to survive motion to dismiss where complaint plausibly alleged defendant was responsible for denying access to religious services, despite fact that at a later stage, defendant "may well be able to carry the 'relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct'") (quoting Salahuddin, 467 F.3d at 275)); Mecca Allah Shakur v. Bruno, No. 3:12 Civ. 984 (SRU), 2013 WL 556797, at *1, *4 (D. Conn. Feb. 8, 2013) (finding plaintiff stated plausible § 1983 claim for violation of First Amendment rights with allegation that defendants refused to permit him to engage in group religious services).[31]  Accordingly, I recommend that the motion to dismiss Plaintiff's claim that he was deprived of access to religious services be denied.

---

[31] Even had Defendants put forth an argument that, for example, Plaintiff was not permitted to attend services while in SHU, such a contention "is more properly addressed after discovery has been conducted and the Court has some basis for determining Defendants' motivation." Loccenitt v. City of New York, No. 12 Civ. 948 (LTS) (MHD), 2013 WL 1091313, at *4

### F. Eighth Amendment Violations

#### 1. Plaintiff's Excessive Force Claim Should Be Dismissed.

Plaintiff alleges that on or around September 23, 2008, he was violently assaulted while being moved from his cell. Am. Compl., ¶¶ 20-23, 26. Specifically, he maintains he was punched in the back and head, kicked, and kneed to the point where he could no longer stand or walk. Id. at ¶¶ 21, 23, 25. He also asserts that officers repeatedly forced him to stand up and then dropped him, and subsequently held him up by placing fingers in his nostrils. Id. at ¶ 26.

On their face, these allegations state a plausible claim of excessive force under the Eighth Amendment. See e.g., Nash, 2013 WL 6197087, at *9 ("'It is [however] well established that whenever prison officials 'maliciously' and 'sadistically' utilize force to cause harm to inmates, the 'contemporary standards of decency,' relevant to a determination of the objective seriousness required for an Eighth Amendment analysis, are 'always violated.'") (quoting Randle v. Alexander, 960 F. Supp. 2d 457, 472 (S.D.N.Y. 2013)); Brooks v. Jackson, No. 11 Civ. 6627 (JMF), 2013 WL 5339151, at *4 (S.D.N.Y. Sept. 23, 2013) ("Liberally construed, these allegations [of an officer assaulting plaintiff] raise an Eighth Amendment claim based on excessive force, where the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'") (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, because the Original Complaint alleges that these actions were committed by John Does, the claim should be dismissed as time-barred for the reasons discussed in Section II.C.2.a.

Moreover, even if the claim was deemed to be timely, Plaintiff still does not plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In the Amended Complaint, Plaintiff states that three or four officers – "very possibly" Martin, Mell, Wesley, and Thorpe – severely attacked him while he was held against a wall. Am. Compl., ¶ 20. He

(S.D.N.Y. Mar. 15, 2013) (denying motion to dismiss where Plaintiffs were allegedly precluded from attending weekly congregational service).

maintains that Brothers or a John Doe injured him when taking off his clothes. Id. at ¶ 23. Finally, he asserts that he was further assaulted by two other officers – "possibly" Iuzinni and Speed. Id. at ¶ 26. These allegations are simply insufficient to clear Iqbal's plausibility threshold requiring "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (emphasis added).[32]

Plaintiff's only specific allegation as to Brothers is that he "physically abused" him; but Plaintiff does not contend that Brothers committed the aforementioned assaults and thus fails to give adequate detailed factual allegations to maintain a claim against him. See id. ("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting Twombly, 550 U.S. at 557)).[33]

### 2. Plaintiff's Failure to Protect Claim Should Be Dismissed.

To withstand a motion to dismiss, an Eighth Amendment claim under § 1983 for failure to protect must satisfy a two-pronged test, with both an objective and subjective element. Bridgewater v. Taylor, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (citing Hayes, 84 F.3d at 620 and Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "For the objective component . . . ,

---

[32] Plaintiff does specifically allege that Defendant Wahlquist was a part of the group of officers who attacked him, but, as noted above, claims against Wahlquist should be dismissed as time-barred. See supra at II.C.2.a.

[33] The Court also declines to recommend granting leave to amend because, as noted, any future claim against these Defendants concerning the September 23, 2008 incident would be time-barred, and thus any amendment would be futile. See Nzomo v. Wheeler, No. 10 Civ. 8530 (RA) (JLC), 2013 WL 4713911, at *2 (S.D.N.Y. Sep 03, 2013), Report and Recommendation, adopted by 2014 WL 92711 (S.D.N.Y. Jan 09, 2014); Maersk Line v. Phoenix Agro–Industrial Corp., No. 07 Civ. 3169 (SJF) (JMA), 2009 WL 1505281, at *5 (E.D.N.Y. May 27, 2009). Nor could Plaintiff plausibly make an argument for equitable tolling, given his lack of diligence in pursuing his claims (discussed above) and his failure to provide any explanation for waiting three years to file his Original Complaint. See Lozano v. Montoya Alvarez, 134 S. Ct. 1224, 1231-32 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.").

'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'  Additionally, subjectively, 'the prison official [must] have a 'sufficiently culpable state of mind,' to wit, be deliberately indifferent to the harmful conditions.'" Randle v. Alexander, 960 F. Supp. 2d 457, 473 (S.D.N.Y. 2013) (quoting Farmer, 511 U.S. at 845). See also Lojan v. Crumbsie, No. 12 Civ. 0320 (LAP), 2013 WL 411356, at *4 (S.D.N.Y. Feb. 1, 2013); Miller v. Rosini, Nos. 09 Civ. 7300 (HBP), 09 Civ. 8884 (HBP), 2011 WL 924230, at *6 (S.D.N.Y. March 17, 2011).  In analyzing the objective prong, "the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" Randle, 960 F. Supp. 2d at 474 (quoting Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997)).  With regard to the subjective prong, an official acts with deliberate indifference when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . .  draw[s] the inference." Farmer, 511 U.S. at 837. In other words, the prison official must have "ha[d] knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." Hayes, 84 F.3d at 620; Nji, 2013 WL 6250298, at *9.

Plaintiff broadly alleges that Ercole and Koskowski's failures to protect him resulted in general physical and emotional injuries.  Am. Compl., ¶¶ 7, 8, 33.  But this assertion cannot satisfy the objective inquiry, as Plaintiff does not plausibly allege that the conditions of his confinement posed a substantial risk of serious harm.  Courts have held that to satisfy the first prong, "a plaintiff must demonstrate that this grave harm was 'actual or imminent.'" Dublin v. N.Y.C. Law Dep't, No. 10 Civ. 2971 (LAP), 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012) (quoting Benjamin v. Fraser, 343 F.3d 35, 51 (2d Cir. 2003)).  Some courts have even found that "a substantial risk of harm can only be demonstrated where there is evidence of a previous

altercation between a plaintiff and his attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." Id. (citing Desulma v. City of New York, No. 98 Civ. 2078 (RMB) (RLE), 2001 WL 798002, at *6 (S.D.N.Y. July 6, 2001)).

As described above, Plaintiff asserts that he suffered injuries from the physical attacks that occurred while he was being taken to the SHU. Am. Compl., ¶¶ 20-26. He also maintains that, prior to being assaulted by Green Haven officers, he experienced "severe hostility, discrimination and illegal conduct" in the form of name-calling, having his things stolen, and having an administrative disciplinary ticket brought against him. Id. at ¶¶ 1-3. However, he makes no claims that there were previous altercations with officers, threats of violence, or any other indication that he faced a risk of imminent harm. He also does not allege that he lodged any complaints about feeling in danger. Consequently, the conduct he describes leading up to the attack is insufficient to establish a substantial risk of serious harm, as it does not "rise[ ] to the level of a wanton act of cruelty such that the inmate is in fear of instant and unexpected death at the whim of his . . . custodians." Nji, 2013 WL 6250298, at *10 (quoting Green v. N.Y.C. Dep't. of Corr., No. 06 Civ. 4978 (LTS), 2008 WL 2485402, at *6-7 (S.D.N.Y. June 19, 2008)).[34]

---

[34] Plaintiff also claims that he was "pushed" during "the strip and pat frisk." Id. at ¶ 3. Though this action constitutes more than mere verbal harassment, the Court does not believe this action created conditions in which Plaintiff faced a substantial risk of serious harm; indeed, under the Eighth Amendment excessive force objective inquiry, such incidents are routinely described as de minimis, particularly when in conjunction with a pat frisk. See, e.g., Tavares v. City of New York, No. 08 Civ. 3782 (PAE) (JCF), 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (citing cases), Report and Recommendation, adopted by 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011). Moreover, even if this isolated incident was enough to pose a substantial risk of serious harm, Plaintiff still cannot satisfy the subjective prong of the failure to protect inquiry, as there is no suggestion whatsoever that Ercole or Koskowski were aware that Plaintiff was pushed during a pat frisk, nor does Plaintiff give any indication that he tried to identify the officer or make Defendants aware of the altercation. Parris v. New York State Dep't Corr. Servs., 947 F. Supp.

While it is true that an inmate need not actually suffer serious physical injury to face a substantial risk of serious harm, see, e.g., Alsaifullah v. Furco, No. 12 Civ. 2907 (ER), 2013 WL 3972514, at *12 (S.D.N.Y. Aug. 2, 2013), there is simply nothing to suggest that there was a substantial risk from the conduct alleged.  See Dublin, 2012 WL 4471306, at *5 (finding no substantial risk given lack of threats of violence prior to attack); Ketterman v. City of New York, No. 00 Civ. 1678 (NRB), 2001 WL 579757, at *6 (S.D.N.Y. May 30, 2001) (finding no risk where plaintiff did not allege "that any corrections officer was specifically aware of any substantial risk of harm to him" or that "there were any general or specific threats made against him, that there was any history of violence or ill-will between himself and [anyone in the prison] or his assailants in particular, or that he perceived himself to be at any risk of harm, let alone that he informed a prison official of any perceived risk to him").[35]

Even assuming Plaintiff could establish he was at a substantial risk for serious harm, he "has failed to plead sufficient facts to establish the actual knowledge component of the subjective prong: he has not shown why [Ercole and Koskowski] should have known that a beating was

---

2d 354, 363 (S.D.N.Y. 2013) ("[T]he fact[s] that the plaintiff claims he is unaware of the identity of his attacker [and that there were no allegations of prior threats or altercations] make[ ] it implausible to infer that the defendants had any particular knowledge of the risk the plaintiff faced.").

[35] Plaintiff's complaint broadly suggests that he suffered abuse because of his conviction for a sexual offense.  Am. Compl., ¶¶ 1-3, 5, 18, 26.  The Court recognizes such circumstances may pose a risk of harm given that, in some correctional centers, "inmates charged with sex crimes are removed from the general prison population because they are at greater risk of assault by other inmates."  Arnold v. Cnty. of Nassau, 252 F.3d 599, 601 (2d Cir. 2001).  However, as discussed in the text, the Court need not decide the issue given that Plaintiff has not shown that Defendants were aware of a particular or general risk to him.  Alsaifullah, 2013 WL 3972514, at *12 (finding no substantial risk where Plaintiff did not allege status exposed him to danger and citing cases for proposition that taunting absent a threat of physical harm was not enough to establish risk).  Nor does he "claim that there was a pattern of physical beatings following verbal harassment," or that inmates convicted of sex offenses are consistently attacked by officers.  Bridgewater, 698 F. Supp. 2d at 358.

likely to occur." Bridgewater, 698 F. Supp. 2d at 358; see also Parris v. N.Y. State Dep't Corr.
Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("In this case, it is unnecessary to decide
whether the plaintiff has satisfied the objective prong of Farmer because he has failed to satisfy
the subjective prong.") (citing Lee v. Artuz, No. 96 Civ. 8604 (JGK), 2000 WL 231083, at *5
(S.D.N.Y. Feb. 29, 2000)).

First, Plaintiff does not claim that Ercole and Koskowski should have known that he was
particularly at risk that he might suffer serious harm.  He does not assert that he notified them
about perceived threats to his safety, nor that they were aware of any prior attacks (threatened or
actual).  See Parris, 947 F. Supp. 2d at 363 (finding no deliberate indifference where "the
Complaint does not allege that the defendants knew of any threats made against the plaintiff or
that the plaintiff had been involved in any prior altercations"); Bridgewater, 698 F. Supp. 2d at
358 (finding no knowledge or awareness where plaintiff did "not claim that there was a pattern
of physical beatings following verbal harassment, nor . . . that [the assailant] often beat prisoners
while escorting them back to their cells"); Coronado v. Goord, No. 99 Civ. 1674 (RWS), 2000
WL 1372834, at *5 (S.D.N.Y. Sept. 25, 2000) (finding supervisors not liable given their lack of
awareness that plaintiff had previously been assaulted or that he felt at risk).

Nor does Plaintiff plead facts sufficient to suggest that "prison conditions posed a
generalized threat to the safety of all inmates" or that there were other attacks against prisoners
when being transferred to the SHU.  Coronado, 2000 WL 1372834 at *5.  He does not "allege
that the defendants knew of a history of prior . . . attacks similar to the one suffered by the
plaintiff and that the measures they should have taken in response to such prior attacks would
have prevented the attack on the plaintiff." Parris, 947 F. Supp. 2d at 636.  Accordingly,
Plaintiff's claim that Ercole and Koskowski failed to protect him should be dismissed.  See

Coronado, 2000 WL 1372834 at *4 ("If Defendants did not know of the risk to [Plaintiff] –

either by receiving notice of prior attacks and a lingering threat against him personally or by their

awareness that a substantial risk of attacks . . . was pervasive and well-documented – then they

cannot be held liable for failure to protect him under the Eighth Amendment standard.") (citing

Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985)).  For all these reasons, Plaintiff's failure to

protect claim should be dismissed.

### 3.  Plaintiff's Failure to Train and Supervise Claim Should Be Dismissed.

Plaintiff also alleges that Defendants Ercole and Koskowski were "deliberately

indifferent" in "failing to prevent discrimination, assaults, retaliations, racism, petit larceny," and

grossly negligent in failing properly supervise and train prison staff.  Am. Compl., ¶ 33.  For the

reasons discussed below, Plaintiff fails to establish any personal involvement of Ercole or

Koskowski in their roles as supervisors, as there are insufficient facts pled to establish deliberate

indifference, gross negligence, awareness and failure to remedy any unconstitutional behavior, or

the creation or continuance of a policy under which unconstitutional acts occurred.

"'[S]upervisor liability in a § 1983 action depends on a showing of some personal

responsibility, and cannot rest on respondeat superior.'"  Richardson v. Goord, 347 F.3d 431, 435

(2d Cir. 2003) (quoting Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003).  See also,

Seymore v. Dep't of Corr Servs., No. 11 Civ. 2254 (JGK), 2014 WL 641428, at *6 (S.D.N.Y.

Feb. 18, 2014) ("'[T]here is no respondeat superior liability in § 1983 cases.'") (quoting Green v.

Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citation omitted)).  "[A] defendant cannot be held liable

merely because he occupied a supervisory position."  Randle, 960 F. Supp. 2d. at 477 (quoting

Harrison v. Goord, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *9 (S.D.N.Y. June 9, 2009)

(citing cases); Walker v. Schriro, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *15 (S.D.N.Y.

Mar. 26, 2013) ("A defendant's status as warden or commissioner of a prison, standing alone, is

. . . insufficient to support a finding of supervisory liability."). A supervisor may only "be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)

Plaintiff asserts that Ercole and Koskowski are responsible for various constitutional violations, including theft, retaliation, discrimination, abuse, and due process violations. As discussed in other portions of this Report and Recommendation, Plaintiff does not sufficiently plead facts to establish constitutional violations on these grounds. The only plausible constitutional violation that Plaintiff describes for which Ercole and Koskowski could be responsible (with the exception of inadequate medical treatment, which is considered below) is the alleged attack on Plaintiff by various Green Haven officers. However, Plaintiff fails to plead sufficient facts to reasonably suggest that this assault was a consequence of deficient training or supervision on the part of Ercole or Koskowski, and there are also no factual allegations concerning their role in creating any custom or policy or fostering an environment under which such violations were condoned. Plaintiff's only allegations against Ercole – that Ercole knew of various constitutional violations committed by his staff and failed to properly train and supervise them – are conclusory and "constitute nothing more than recitations of the applicable standard without supporting factual context." Randle, 960 F. Supp. 2d at 479. Such "vague and conclusory allegations" that Ercole and Koskowski "failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." Green v. Leubner, No. 9:07 Civ. 01035 (LEK) (DEP), 2009 WL 3064749, at *4 (N.D.N.Y. Sept. 1, 2009) (finding no liability where no allegation that

supervisor defendant "was at all involved in the circumstances preceding or surrounding the attack on the plaintiff" nor that defendant had any reason to know of prior verbal disagreements or reason for attack) (citing Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009)); Walker, 2013 WL 1234930, at *15 ("Broad, conclusory allegations that a high-ranking defendant was informed of an incident are also insufficient.") (internal quotations omitted).

Plaintiff does allege that, after the fact, Koskowski "fully knew that [Plaintiff] had been severely assaulted by staff," Am. Compl., ¶ 10, but there is no suggestion that Koskowski knew about or was deliberately indifferent to any risk of harm prior to the alleged attack. Bridgewater, 698 F. Supp. 2d at 359-60 (finding no personal involvement for claims of failure to train and supervise when supervisor only learned of beating after it occurred); Curtis v. Williams, No. 11 Civ. 1186 (JMF), 2013 WL 1915447, at *6 (S.D.N.Y. May 9, 2013) ("Although Plaintiff alleges in conclusory fashion that 'after learning of the actions of the herein mentioned Defendants that violated Plaintiff's rights, [the supervisor] failed to remedy the obvious wrongs,' making him 'grossly negligent in failing to adequately supervise the subordinates who violated Plaintiff's rights' he does not allege any facts that could explain how [the supervisor's] 'gross negligence' was the cause of his injury.").

Furthermore, "[a]llegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983. Parris, 947 F. Supp. 2d at 364 (citing Strano v. City of New York, No. 97 Civ. 0387 (RPP), 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998)). In addition, claims regarding "'defendants' knowledge of alleged constitutional violations [are] insufficient to impose supervisory liability' under § 1983 unless accompanied by allegations that the defendants had direct responsibility for monitoring the alleged violation or that there had been a 'history of

previous episodes' putting the defendants on notice of the problem." Id. (quoting Candelaria v. Coughlin, No. 91 Civ. 1117 (LBS), 1991 WL 113711, at *2 (S.D.N.Y. June 18, 1991)). Thus, Plaintiff's failure to train and supervise claim against Koskowski and Ercole are insufficient to establish personal involvement and should be dismissed.

### 4. Plaintiff's Claim of Inadequate Medical Care Should Be Dismissed Against All Defendants, With the Exception of Koskowski.

To the extent that Plaintiff also contends that Defendants were responsible for any inadequate medical care (see Am. Compl., ¶¶ 7-8, 13, 15), the Court will address that purported Eighth Amendment violation as well. The Eighth Amendment "imposes a duty on prison officials to ensure that inmates receive adequate medical care." Salahuddin, 467 F.3d at 279 (citing Farmer, 511 U.S. at 832). To properly plead an Eighth Amendment violation arising out of inadequate medical treatment under § 1983, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Like the failure to protect inquiry, the test for deliberate indifference under § 1983 involves two components: (1) an objective "medical need" element, which requires that the deprivation of care is "sufficiently serious," and (2) a subjective "deliberate indifference" element based on whether the prison official acted with a sufficiently culpable state of mind. Salahuddin, 467 F.3d at 279-80; Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

In analyzing the objective element, a court must determine "whether the prisoner was actually deprived of adequate medical care," and, second, "whether the inadequacy in medical care is sufficiently serious." Salahuddin, 467 F.3d at 279-80. A deprivation is sufficiently serious "in the sense that 'a condition of urgency, one that may produce death, degeneration or extreme pain' exists." Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 439 (S.D.N.Y. 2004) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). Courts must also consider "how the offending conduct is inadequate and what harm, if any, the inadequacy has

caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280. This requires distinguishing whether a prisoner was denied treatment altogether, in which case courts examine the severity of the medical condition, or whether the medical treatment given was inadequate, in which case the court considers the severity of the inadequacy and effect on the inmate. Id. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

The subjective element requires a plaintiff to show that the defendant has "the requisite state of mind, which is the equivalent to criminal recklessness: knowledge of, and conscious disregard for, this serious risk." Carrasquillo, 324 F. Supp. 2d at 439. Indeed, "[t]he charged official must be subjectively aware that his conduct creates such a risk" and "[a] defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere." Salahuddin, 467 F.3d at 281.

Plaintiff fails to state an Eighth Amendment claim for inadequate medical care against Defendant Ercole. The only potential allegation is that on or about August 12, 2008, Plaintiff wrote a letter to Ercole requesting a "medically needed move," and he subsequently referred it to a Captain Burnett (who is not a defendant in this case). Am. Compl., ¶ 15. However, Plaintiff cannot possibly sustain a claim for deliberate indifference or gross negligence against Ercole, given his acknowledgement that he received the relief he asked for: he was ultimately moved shortly thereafter. Id. at ¶ 17.

Relatedly, Plaintiff asserts that prior to requesting a move from Ercole, he had been denied an opportunity to move by Benitez, who "only performed moves when inmates paid inmate Johnson to move them." Id. at ¶¶ 16, 17. As an initial matter, this claim is time-barred

given that the denials occurred more three years before the filing of the Original Complaint.

Moreover, Plaintiff does not contend that there was a sufficiently serious deprivation of care that

occurred between the time when he was allegedly denied a move by Benitez and when he

changed cells.  Thus, his complaint does not demonstrate he suffered a "serious medical injury"

as a result of Ercole or Benitez's actions.  See, e.g., Dobbin v. Artuz, 143 F. Supp. 2d 292, 302

(S.D.N.Y. 2001) (no deliberate indifference where plaintiff requested to be moved on several

occasions but failed to demonstrate any medical need for such an action and holding that

"inmates are entitled to reasonable treatment, not the specific treatment they desire").[36]

 Regarding Defendant Koskowski, Plaintiff alleges that he witnessed Plaintiff's injuries

multiple times and was aware that Plaintiff could not walk, as he was "hopping on one foot and

hanging on to objects for balance."  Am. Compl., ¶ 11.[37]  When Koskowski asked what had

happened, Plaintiff contends that he informed him that Plaintiff's injuries were a result of being

attacked.  Id. at ¶ 12.  Plaintiff also asserts that even after seeing his injuries and learning of the

attack, Koskowski failed to remove Plaintiff from the SHU to the clinic and failed to change the

policy of allowing inmates in the SHU to use crutches or a cane.  Id. ¶ 13.  Plaintiff states that his

condition has worsened since the time of the assault, and that "his hip (right) joint is wearing out

---

[36] Defendants also argue that the claims against Defendant Benitez (as well as Defendant Murphy) should be dismissed on statute of limitations grounds.  Def. Mem., at 17.  Given that the Court recommends dismissing claims against both Benitez and Murphy (see infra II.G.1 and 4) on the ground that Plaintiff fails to state a plausible claim against them, the Court declines to reach the question of whether claims against those Defendants would otherwise be time-barred.

[37] Plaintiff asserts that he was released from the infirmary by Defendant Bendheim before seeing a doctor or being properly evaluated, and that he could not walk.  Am. Compl., ¶ 25.  He also alleges that Defendant Fila, a registered nurse, left him "screaming, crying, hyperventilating and unable to talk."  Id. at ¶ 24.  However, any claims against Bendheim and Fila cannot proceed, because Bendheim was not served and neither one was named in the Original Complaint.  Moreover, even if the claims could go forward, Plaintiff has not alleged the requisite state of mind, i.e., conscious disregard for a serious risk.

at an extremely rapid pace, and a severe deterioration causing pain, loud cracking and up until

2011, a difficulty in moving about." Id. at ¶ 34.

Reading the Amended Complaint in its most favorable light, I cannot at this stage

recommend dismissing Plaintiff's claim that Koskowski was personally involved in denying

Plaintiff treatment for a serious medical need. While "an administrator's response to a medical

issue is insufficient to establish deliberate indifference if the administrator himself never

provided medical care, since prison administrators may defer to medical staff regarding medical

treatment of inmates, . . . an administrator who defers to medical staff may be personally

involved if the inmate's grievance demonstrates that his medical treatment was egregiously

inadequate." Lewis v. Cunningham, No. 05 Civ. 9243 (GBD) (RLE), 2011 WL 1219287, at

*5 (S.D.N.Y. Mar 14, 2011) (internal citations omitted), adopted by 2011 WL 1218061

(S.D.N.Y. Mar 30, 2011).  In Plaintiff's case, "[r]ead in the most favorable light, [his] complaint

alleges . . . that the named DOC[C]S Employee[ ] [was] aware of, but failed to remedy, the

ongoing violations of Plaintiff's constitutional right to receive adequate medical attention for a

debilitating condition." Carrasquillo, 324 F. Supp. 2d at 440.  Regarding the objective element,

Plaintiff claims the assault caused severe deterioration and pain in his right hip and that

following the attack he could not walk.  "Such a condition counts as 'sufficiently serious' under

Hathaway, since a risk of both degeneration and extreme pain is alleged." Id. at 439.  Indeed,

"[m]obility is fundamental to our continued health, and the denial of reasonable care that could

prevent the loss of the ability to circumambulate is indeed serious." Giambalvo v. Sommer, No.

10 Civ. 6774 (JPO), 2012 WL 4471532, at *5 (S.D.N.Y. Sept. 19, 2012) (denying motion to

dismiss where plaintiff alleged he could not walk without specific medical shoes and defendant

was aware of requests).  To be sure, Plaintiff has provided no medical records, but he does assert

that he was not treated by a doctor and was released from the infirmary without being able to

walk.  The Court believes "that discovery could shed light on whether Plaintiff's medical need

was of such seriousness and urgency that the failure to address it promptly amounted to a

violation of Plaintiff's constitutional rights." Id. Accordingly, "[d]rawing all inferences in Plaintiff's favor, as the Court must, the Court concludes that Plaintiff has sufficiently alleged that he had a serious medical need" in that he "has alleged that he suffered severe and degenerative pain and that he had difficulty walking." Id.

As for the subjective prong, Plaintiff clearly alleges that Koskowski knew of and consciously disregarded a serious risk to his safety. If, as Plaintiff alleges, Koskowski witnessed him in a state where he could not physically stand up, then Koskowski was clearly aware that medical staff had denied adequate medical treatment and he allowed that deprivation to continue. "That is sufficient to state a claim under § 1983." Carrasquillo, 324 F. Supp. 2d at 440. See also Carbonell v. Goord, No. 99 Civ. 3208 (AJP), 2000 WL 760751, at *8 (S.D.N.Y. June 13, 2000) (denying summary judgment where plaintiff alleged that guard forced him to go down stairs with crutches because claim gave rise to inference that guard was aware that he was placing prisoner in serious danger, but proceeded anyway); Rosales v. Coughlin, 10 F. Supp. 2d 261, 268-70 (W.D.N.Y. 1998) (finding triable issue of fact regarding deliberate indifference because "factfinder could conclude that plaintiff's condition significantly affects his daily activities, and that he suffers chronic and substantial pain" in case where plaintiff alleged he suffered severe pain after cane was taken and that certain guards were aware cane was taken).

Indeed, as the Court explained in Carrasquillo, when considering a claim for inadequate medical treatment:

> Construing Plaintiff's allegations liberally and assuming they are true, as I must do when considering this motion to dismiss a pro se complaint, I cannot say that plaintiff could prove no set of facts that would not rise to the level of deliberate indifference under the Hathaway test. Of course, Plaintiff's allegations may well be exaggerated, or even false. But that is not something I can consider on a motion to dismiss.

324 F. Supp. 2d at 439. Thus, taking into account Plaintiff's pro se status, with respect to the claim that Koskowski is liable for failing to remedy the denial of adequate medical treatment, the motion to dismiss should be denied.

## G. Other Claims

### 1. Plaintiff's First Amendment Retaliation Claim Should Be Dismissed.

Plaintiff makes multiple allegations of retaliation, but only in a conclusory manner. Read broadly, the Amended Complaint seems to be alleging that Plaintiff was being "retaliated against" as a result of his criminal conviction for a sexual offence. <u>See</u> Am. Compl., ¶¶ 2, 3, 14, 18 (officers took plaintiff's property and called him names in retaliation for criminal case) (Koskowski condoned retaliatory assault against Plaintiff). As an initial matter, "the Second Circuit has warned that 'because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations.'" <u>Nji</u>, 2013 WL 6250298, at *7, (quoting <u>Smith v. Levine</u>, 510 F. App'x 17, 20 (2d Cir. 2013)). "Accordingly, 'a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.'" <u>Turner</u>, 2014 WL 641454, at *10 (quoting <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983)).

Plaintiff does not state a plausible claim of retaliation. To survive a motion to dismiss, a prisoner asserting such a claim must "show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." <u>Espinal v. Goord</u>, 558 F.3d 119, 128 (2d Cir. 2009); <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004). However, Plaintiff cannot meet the first prong as he has failed to allege that he has engaged in a protected activity. Having a criminal conviction of a sexual nature is hardly protected conduct, and thus his claim of retaliation should be dismissed. <u>See, e.g.</u>, <u>Reeder v. Hogan</u>, No. 9:09 Civ. 520 (NAM) (ATB), 2010 WL 3909050, at *5 (N.D.N.Y. Sept. 30, 2010) (dismissing claim that defendants retaliated against him "because he attempted to assault several corrections officers" and "attempting to assault correctional officers is not protected conduct under the First Amendment"); <u>Beckles v. Bennett</u>, No. 05 Civ. 2000 (JSR), 2008 WL 821827, at *19 (S.D.N.Y.

March 26, 2008) ("There is, however, no First Amendment right to engage in a prison uprising or riot, and thus Plaintiff cannot satisfy the first element of a retaliation claim.").

To the extent that Plaintiff alleges he was placed under investigation in retaliation for filing a grievance against Defendant Benitez (see supra n.5), that claim should be dismissed. While "[i]t is well recognized that the filing of a grievance is protected conduct and can thus satisfy the first prong of a retaliation claim," Nji, 2013 WL 6250298, at *7 (internal quotations omitted), Plaintiff does not allege any facts to plausibly establish a causal connection between his filing and any adverse action that was taken against him. Specifically, Plaintiff alleges that he told another prisoner that he intended to file a grievance against Benitez (it is unclear whether such a grievance was ever filed), and then that "[s]everal days later, [he] was placed under investigation." Am. Compl., ¶ 19. This is insufficient to create an inference that Plaintiff was issued a ticket because of his grievance, particularly in light of the facts that Benitez is not alleged to have been a part of the ticket investigation and that Plaintiff also asserts he was investigated because of false inmate allegations. Id. at ¶ 9.

### 2. Plaintiff's Deprivation of Property Claim Should Be Dismissed.

Plaintiff alleges Defendants Benitez and Brothers confiscated a variety of items from his cell and that Ercole and Koskowski are also responsible for an "illegal depriv[ation] of property." Am. Compl. ¶¶ 17, 28, 33.[38] Such claims are improper in federal § 1983 actions. To wit, "[d]eprivation of an inmate's property by a state actor may constitute a violation of the inmate's due process rights under the Fourteenth Amendment, but only if a meaningful post-deprivation remedy is not available. New York State, however, provides inmates with a post-deprivation remedy through the Court of Claims." Bridgewater, 698 F. Supp. 2d 351 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984) and DeMaio v. Mann, 877 F. Supp. 89, 95 (N.D.N.Y. 1995)). Thus, the existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983. Davis v. New York, 311 F. App'x 397, 400 (2d Cir. 2009);

---

[38] Plaintiff also alleges that Defendant Phillips stole items from his cell, but, as discussed above, the Court recommends dismissal of Phillips under Rule 4(m).

Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001); Williams v. Ramos, No. 13 Civ. 826 (VB),
2013 WL 7017674, at *8 (S.D.N.Y. Dec. 23, 2013).   Accordingly, as Plaintiff cannot state a due
process property violation against Defendants Benitez or Brothers, and there is thus no
underlying constitutional violation for which Ercole or Koskowski would be liable as
supervisors, the Court recommends dismissal of that claim.

### 3.  Plaintiff's Search and Seizure Claim Should Be Dismissed.

Plaintiff also claims that Benitez "retaliated against [him] by searching [his] cell and
thrashing it." Am. Compl., ¶ 16.  To start, it is not clear exactly why Plaintiff believes Benitez
was retaliating against him, though it appears to be because Plaintiff requested a cell transfer for
medical reasons.  Id. at ¶ 15-16.  As discussed above, to survive a retaliation claim, a plaintiff
must assert that he has suffered an adverse action resulting from his exercise of a constitutionally
protected right.  However, "[i]t is well recognized that an inmate has no constitutional right to be
incarcerated at a particular correctional facility, and transfers among facilities do not need to be
proceeded by any particular due process procedure." Johnson v. Brown, No. 9:09 Civ. 0002
(GTS) (DEP), 2010 WL 6243352, at *16 (N.D.N.Y. Sept. 3, 2010), Report and
Recommendation, adopted by 2011 WL 1097864 (N.D.N.Y. Mar 22, 2011). See also McMahon
v. Fischer, 446 F. App'x 354, 357 (2d Cir. 2011) ("A prisoner has no right to housing in a
particular facility and no right to process regarding a transfer to another facility.").  While a
prisoner may be able to state a claim of retaliation alleging that he was transferred to a facility
with less medical resources in retribution for constitutionally protected speech, see, e.g.,
Flemming v. Wurzberger, 322 F. App'x 69, 71-72 (2d Cir. 2009), or that he was denied a
transfer because of grievances filed, see, e.g., Johnson, 2010 WL 6243352, at *16, there is no
protected right to seek a transfer, and thus Plaintiff cannot satisfy the first prong of the test for
retaliation.  Kearney v. N.Y.S. D.O.C.S., No. 9:11 Civ. 1281 (GTS) (TWD), 2013 WL 5437372,
at *14 (N.D.N.Y. Sept. 27, 2013) (finding no protected interest in plaintiff's request for medical
transfer).

Moreover, "[t]he Fourth Amendment proscription against unreasonable searches 'does not apply within the confines of the prison cell,' even where the search is retaliatory in nature." Beckles, 2008 WL 821827, at *21 (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984) (citations omitted). See Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) ("Plaintiff's cell search allegation is dismissed in its entirety because the Supreme Court has held that searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature."). Thus, Plaintiff cannot state a plausible claim against Benitez based on any search that was conducted of his cell.

### 4. Plaintiff's Claim Regarding the Disciplinary Ticket Should Be Dismissed.

Plaintiff alleges a variety of claims arising out of an incident where he was administered a disciplinary ticket. He claims that the ticket was based on a series of false allegations by inmates and that Defendant Murphy failed to conduct an adequate investigation into the allegations, that Koskowski failed to dismiss the proceedings related to the ticket, and that Cecelia interfered with his defense. Am. Compl., ¶¶ 9-11.[39]

To the extent that Plaintiff argues that he was falsely accused in a misbehavior report, he fails to state a claim. Allegations of a false misbehavior report "cannot support a procedural due process claim if the inmate was afforded a fair opportunity to refute the charges." Livingston v. Kelly, 423 F. App'x 37, 40 (2d Cir. 2011); Pittman v. Forte, No. 9:01 Civ. 0100 (LEK) (GLS), 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) ("The Second Circuit has held that 'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.'") (quoting Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)). "As long as prison officials grant the inmate a hearing and an opportunity to be heard, the 'filing of unfounded charges d[oes] not give rise to a per se constitutional violation actionable under section 1983."

---

[39] Plaintiff's Amended Complaint also includes a one sentence allegation that Koskowski and Cecelia committed libel and slander. Id. at ¶ 36. However, the state law torts of slander and defamation are not actionable under § 1983. See, e.g., Grogan v. Blooming Grove Volunteer Ambulance Corp., 917 F. Supp. 2d 283, 289 n.5 (S.D.N.Y. 2013).

Franco v. Kelly, 854 F.2d 584, 587 (2d Cir.1988) (quoting Freeman v. Rideout, 808 F.2d 949,

951 (2d Cir. 1986)). Here, Plaintiff acknowledges that he was given a hearing, and thus was

afforded the due process warranted under the Constitution. Am. Compl., ¶ 31.

Moreover, inmates are not constitutionally entitled to an investigation of any kind by

government officials. Nji, 2013 WL 6250298, at *6; Bernstein v. New York, 591 F. Supp. 2d

448, 460 (S.D.N.Y. 2008); Longi v. County of Suffolk, No. 02 Civ. 5821 (SJF) (WDW), 2008

WL 858997, at *5 (E.D.N.Y. Mar. 27, 2008)). In order for a constitutional violation to have

occurred, the investigation itself must have resulted in a deprivation of a constitutional right.

Rodriguez v. Peguero, No. 9:09 Civ. 1005 (TJM) (ATB), 2011 WL 754123 (N.D.N.Y. Jan 27,

2011) (citing Faison v. Hash, No. 03 Civ. 6475P, 2004 WL 944523, at *2 (W.D.N.Y. April 23,

2004)), Report and Recommendation, adopted by 2011 WL 744799 (N.D.N.Y. Feb 24, 2011).

Here, as previously stated, Plaintiff was granted a hearing to address the allegations in the ticket,

and he states no claim that the investigation deprived him of any due process. See Am. Compl.,

¶ 9 (alleging that Murphy's investigation was deficient because he only interviewed the

accusers). Accordingly, Plaintiff fails to state a claim based on his allegations that Murphy

failed to investigate prior to the hearing and that Koskowski "continued the hearing." Id. at ¶¶ 9-

10.

Finally, Plaintiff claims that Defendant Cecelia urged him not to call witnesses or present

a defense at his administrative segregation hearing. Id. at ¶ 31. Plaintiff does not have an

absolute right to present witnesses at a disciplinary hearing. Baxter v. Palmigiano, 425 U.S. 308,

320 (1976) ("The right to call witnesses . . . is thus circumscribed by the necessary mutual

accommodation between institutional needs and objectives and the provisions of the Constitution

that are of general application.") (internal quotations omitted). See also Walker v. McClellan,

126 F.3d 127, 129-30 (2d Cir. 1997). "Due process requires that an inmate 'has a restricted right

to call witnesses' at a disciplinary hearing, though a hearing officer may 'refuse to call witnesses

whose testimony may be reasonably regarded as duplicative or non probative.'" Wright v.

Esgrow, No. 10 Civ. 6502 (CJS), 2013 WL 1826053, at *7 (W.D.N.Y. Apr. 30, 2013) (quoting

Feliciano v. Selsky, 199 F.3d 1322 (2d Cir. 1999)). Here, Plaintiff does not assert that Cecelia coerced witnesses not to testify or that he was prohibited from calling witnesses – he only maintains he was "urged" not to call them. Am. Compl., ¶ 31. Such allegations, without more, cannot sufficiently establish a due process violation, particularly given that Plaintiff makes no claims that he even attempted to call a witness or was prevented from doing so. See e.g., Wright, 2013 WL 1826053, at *7 (no due process violation where plaintiff alleged request for witness testimony was denied but evidence showed he did not attempt to call witnesses). Furthermore, Plaintiff explains that he actually presented "incontrovertible evidence" that the allegations in the ticket were "not only NOT plausible or feasible but actually impossible," thereby undermining any claim that he was somehow convinced not to present a defense. Am. Compl., ¶ 10. Accordingly, these claims should be dismissed.

### H. Leave to Amend

As Plaintiff is proceeding pro se, the Court would ordinarily recommend that he be given leave to amend his complaint to replead all factually insufficient claims. See Grullon, 720 F.3d at 139 (district court generally should not dismiss pro se complaint without granting at least one opportunity to replead factually insufficient claims); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (same). Here, however, Plaintiff has already had the opportunity to amend his complaint once (and failed to amend a second time despite being given more than three months to do so). Moreover, the Court is recommending that this case proceed on Plaintiff's First Amendment claim against Defendant Chill and his Eighth Amendment claim against Defendant Koskowski. In addition, the Court is of the view that any additional amendment would be futile for the various reasons set forth in this Report. See, e.g., Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."). Accordingly, I recommend that the Court decline to grant Plaintiff leave to further amend his complaint.

## III.   CONCLUSION

To summarize, the Court makes the following recommendations:

- Defendants Phillips and Bendheim should be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure as they were never served with the Amended Complaint;

- Defendants' motion to dismiss on exhaustion grounds should be denied without prejudice to renewal as to the remaining defendants;

- Defendants Ercole and Chill's motion to dismiss on statute of limitations grounds should be denied;

- Plaintiff's claims against the defendants described as "John Does" in the Original Complaint should be dismissed as time-barred;

- Plaintiff's claims against the Defendants who were described by name or position in the original complaint should be found to be timely, except for Defendant Monzon, as to whom the complaint should be dismissed on statute of limitations grounds;

- Plaintiff's claim brought pursuant to the Religious Freedom Restoration Act should be dismissed;

- Defendant Chill's motion to dismiss the claim against him for failure to provide Kosher meals and access to religious services should be denied;

- Plaintiff's claim against Defendant Foroscij should be dismissed;

- Plaintiff's excessive force claim should be dismissed;

- Plaintiff's failure to protect claim should be dismissed;

- Plaintiff's failure to train and supervise claim should be dismissed;

- Plaintiff's claim of inadequate medical care should be dismissed against all Defendants, except Koskowski;

- Plaintiff's retaliation claims should be dismissed;

- Plaintiff's deprivation of property claims should be dismissed;

- Plaintiff's search and seizure claims should be dismissed;

- Plaintiff's claims regarding the disciplinary ticket he received should be dismissed.

Thus, if the Court adopts these recommendations, the remaining claims will be Plaintiff's claims against Defendant Chill for violating his right to receive kosher meals and access to religious services, and his claim against Defendant Koskowski pertaining to inadequate medical treatment. Accordingly, the motion to dismiss should be granted in part and denied in part.

**PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010). If Plaintiff does not have access to cases cited herein that are reported on Westlaw or Lexis, he should request copies from Defendants. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: April 24, 2014
      New York, New York

                                JAMES L. COTT
                                United States Magistrate Judge

**A copy of this Report & Recommendation has been sent to:**

JCG
01-A-0483
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403-3600